Magistrate Judge Nina Y. Wang
This matter comes before the court on Defendant Linda McMahon's Motion to Dismiss. [# 7, filed October 10, 2017]. The Motion to Dismiss is before the court pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated November 21, 2017 [# 19]. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and, for the reasons stated below, GRANTS the Motion to Dismiss.
FACTUAL AND PROCEDURAL HISTORY
Plaintiff Sue Cirocco ("Plaintiff" or "Ms. Cirocco") initiated this lawsuit through counsel on June 29, 2017, by filing a Complaint asserting unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and for retaliation. [# 1].[1] The court draws the following facts from Ms. Cirocco's Complaint, and accepts them as true for the purposes of considering the Motion to Dismiss. Ms. Cirocco began working at the United States Small Business Administration ("SBA") in August 2009 as a Finance Division Manager. [# 1 at ¶ 9]. In December 2012, she was promoted to Finance Director over two male colleagues, Mr. Bates and Mr. Berges, who "vocally expressed" their displeasure, suggested the promotion was on account of gender, and "went as far to file an EEO complaint regarding Mr. Cirocco's selection."[2] [Id. at ¶¶ 10-13]. In October 2013, *1089 Mr. Gribben was hired as the Deputy Chief Financial Officer and he became Ms. Cirocco's manager. [Id. at ¶¶ 15-16]. Ms. Cirocco alleges that Mr. Gribben and Mr. Bates began working together to her exclusion and "outside the normal chain of command." [Id. at ¶ 17]. At one point, Mr. Gribbon reversed Ms. Cirocco's performance review of Mr. Bates, [id. at ¶¶ 20-22]; he also instructed Ms. Cirocco not to issue written discipline to Mr. Bates after Mr. Bates had been insubordinate to her and verbally abusive toward one of his female co-workers. [Id. at ¶¶ 26, 27-28, 31-32]. Mr. Gribben also instructed Ms. Cirocco against further communicating with Mr. Bates, an employee whom she managed. [Id. at ¶¶ 33-34].
Ms. Cirocco alleges that not only was Mr. Gribben "complicit in supporting Mr. Bates' discriminatory behavior," he reprimanded her for retaliating against Mr. Berges for his filing of an EEO complaint, when in fact Mr. Berges "routinely confided in Ms. Cirocco about the stress he experienced in filing his complaint." [# 1 at ¶¶ 35, 37-38, 40]. Ms. Cirocco asserts that Mr. Gribben gave her a poor annual review ("FY14") that was lower than any review she had ever received at the SBA, and in stark contrast to her mid-year performance review that she was "doing a fabulous job." [Id. at ¶¶ 42-43, 49]. When Plaintiff asked Mr. Gribben about the FY14, he said he "based his decision on 'complaints about [her] professional conduct,' " which Plaintiff alleges referred to her "efforts to discipline Mr. Bates for verbally berating a female employee." [Id. at ¶¶ 45, 47]. Ms. Cirocco lost the opportunity for a raise as a result of the FY14. [Id. at ¶ 52].
Plaintiff filed her own EEO complaint in February 2015, and alleges the retaliation continued thereafter. She was moved to a less desirable office away from her team; she received a written reprimand for failing to treat Mr. Bates "with respect"; and she was placed under investigation in February and March 2015. [Id. at ¶¶ 60-62]. In March, the chief financial officer of the SBA visited the Denver office and announced that Ms. Cirocco's staff would be reduced by approximately 50 percent so as to comply with "best practices." [Id. at ¶ 65]. Ms. Cirocco alleges that, without adequate staffing and no change in the description of her position, it was impossible to perform her job. [Id. at ¶ 72]. Ms. Cirocco thereafter took a medical leave of absence and ultimately sought employment elsewhere.
Defendant filed the instant Motion to Dismiss on October 10, 2017, [# 7], and, three days later, counsel for Plaintiff moved to withdraw his representation. See [# 8, # 9]. Plaintiff has proceeded pro se since that time. The Parties then consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), [# 18]. On November 28, 2017, the court held a telephonic Status Conference at which the undersigned discussed with the Parties the Motion to Dismiss, and Ms. Cirocco represented that she had intended for certain email correspondence, which she had sent to counsel for Defendant, to serve as her response to the Motion. See [# 22]. Accordingly, the court docketed the correspondence as Plaintiff's Response, see [# 23], and Defendant thereafter filed a Reply, [# 25]. The Motion to Dismiss is now ripe, and the court has determined that oral argument would not materially assist in its disposition.
STANDARD OF REVIEW
I. Rule 12(b)(1)
Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction, arguing that Plaintiff failed to exhaust her administrative remedies because *1090 she failed to participate in the SBA's investigation of her claims and the underlying administrative proceeding. See [# 7]. Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. See Morris v. City of Hobart , 39 F.3d 1105, 1111 (10th Cir. 1994) (citing Castaneda v. INS , 23 F.3d 1576, 1580 (10th Cir. 1994) ). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co ., 495 F.2d 906, 909 (10th Cir. 1974) (emphasis added). As the party seeking to invoke the jurisdiction of this court, Plaintiff bears the burden of alleging facts that support jurisdiction. See Dutcher v. Matheson , 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").
When a party's Rule 12(b)(1) motion challenges the facts upon which subject matter is based, "a district court may not presume the truthfulness of the complaint's factual allegations." Sizova v. Nat'l Inst. of Standards & Tech. , 282 F.3d 1320, 1324 (10th Cir. 2002) (citation and quotations omitted). Instead, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Holt v. U.S. , 46 F.3d 1000, 1003 (10th Cir. 1995). The court's reliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, require conversion of the motion to one for summary judgment under Rule 56. Id. (citation omitted).
II. Rule 12(b)(6)
Defendant also moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), which authorizes a court to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." Casanova v. Ulibarri , 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting Smith v. United States , 561 F.3d 1090, 1098 (10th Cir. 2009) ). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." Id. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Forest Guardians v. Forsgren , 478 F.3d 1149, 1160 (10th Cir. 2007).
III. Pro se Litigants
Ms. Cirocco is currently proceeding pro se and filed her Response as a pro se litigant. Accordingly, the court engages in *1091 a liberal review of the Response and holds it to a less stringent standard than if it were drafted by an attorney. See, e.g., Trackwell v. United States Gov't , 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, the court does not afford the Complaint the same level of review, because an attorney drafted and filed that pleading. Ultimately, regardless of the standard of review applied, the court will not act as an advocate for a pro se litigant, and will not assume that a plaintiff can prove facts that she has not alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. See Gallagher v. Shelton , 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [pro se litigant's] advocate"); Drake v. City of Fort Collins , 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).
ANALYSIS
Title VII prohibits discrimination against any individual "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Harris v. Forklift Sys, Inc. , 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing 42 U.S.C. § 2000e-2(a)(1) ); Khalik v. United Air Lines , 671 F.3d 1188, 1192 (10th Cir. 2012) ; James v. James , 129 F.Supp.3d 1212, 1221 (D. Colo. 2015). Title VII also makes it unlawful to retaliate against an employee for opposing practices made unlawful by that statute. See Hansen v. SkyWest Airlines , 844 F.3d 914, 924-25 (10th Cir. 2016) (citing 42 U.S.C. § 2000e3(a)). The Equal Employment Opportunity Commission ("EEOC") is vested with the authority to enforce § 2000e-16(a). See 42 U.S.C. § 2000e-16(b).
The governing regulations require that an employee first attempt to resolve the matter by filing an informal complaint that triggers counseling with an EEOC Counselor, 29 C.F.R. § 1614.105(a), and, if an informal resolution is not reached, the employee must then file a formal complaint for a decision by an ALJ. See id. §§ 1614.105(d), 1614.106. Thereafter, the employee may file a civil action in federal district court within 90 days of receiving notice of final agency action on the employee's formal complaint by the ALJ, or after 180 days from the filing of the complaint if no final action has been taken by that time. 29 C.F.R. § 1614.407(a)-(b) ; 42 U.S.C. § 2000e-16(c) (stating more specifically that after 180 days from the filing of the formal complaint, the complainant may file a civil action if aggrieved by the final disposition of his complaint or by the failure to take final action on his complaint). "Although § 2000e-16(c) permits an employee to file suit in federal court alleging a violation of § 2000e-16(a)," federal employees must exhaust their administrative remedies before filing suit under Title VII. Id. at § 2000e-16(c). Requiring a Title VII claimant to exhaust administrative remedies serves the purpose of "giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer." Khader v. Aspin , 1 F.3d 968, 971 (10th Cir. 1993) (citation omitted). Historically, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII, not merely a condition precedent to suit. See, e.g., Jones v. Runyon, 91 F.3d 1398, 1399 & n.1 (10th Cir. 1996).
Defendant argues that Plaintiff's claims for sex discrimination and retaliation fail because she did not exhaust her administrative remedies. Specifically, after filing the EEO Complaint in February 2015, Plaintiff "failed to participate in its adjudication *1092 and ultimately abandoned her administrative claims"; and Plaintiff "never pursued any administrative remedies," with respect to the retaliation claim. [# 7 at 1]. Defendant further argues that Plaintiff's Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because she alleges only in conclusory terms that she exhausted her administrative remedies. [Id. at 2]. In support of these arguments, Defendant attaches to her Motion the declaration of William L. Gery, an attorney in the SBA's Office of General Counsel, [# 7-1], to which the following exhibits are attached: Ms. Cirocco's EEO Complaint, [# 7-2]; a letter from the SBA Office of Diversity, Inclusion and Civil Rights, [# 7-3]; a copy of the EEO investigator's Memorandum to File regarding the EEO Complaint, [# 7-4]; and an order of dismissal issued by the Administrative Law Judge ("ALJ") assigned to the matter, [# 7-5].
I. State of the Law
As an initial matter, the court considers whether Plaintiff's failure to participate in the EEOC investigation and proceeding before the ALJ implicates its jurisdiction. The court has an independent obligation to consider its own subject matter jurisdiction, and, conversely, whether an issue is actually one of jurisdiction. See Arbaugh v. Y & H Corp ., 546 U.S. 500, 126 S.Ct. 1235, 1240, 1244, 163 L.Ed.2d 1097 (2006) ; 1mage Software, Inc. v. Reynolds & Reynolds Co. , 459 F.3d 1044, 1048 (10th Cir. 2006). In arguing that the court lacks subject matter jurisdiction as a result of Plaintiff's failure to participate in the EEOC process, Defendant relies heavily on an unpublished case from the Tenth Circuit, Douglas v. Norton , 167 Fed.Appx. 698 (10th Cir. 2006), which in turn relies upon Khader v. Aspin , 1 F.3d 968, 971 (10th Cir. 1993). See [# 7 at 5]. Curiously, Defendant omits any mention or discussion of the ambiguity in the law as reflected in more recent, published decisions.[3]
In Khader , the court stated that exhaustion is satisfied by a "[g]ood faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information"; and advised that, conversely, "when a complainant refuses or fails to provide the agency information sufficient to evaluate the merits of the claim, he or she cannot be deemed to have exhausted administrative remedies." Khader , 1 F.3d at 971 (finding plaintiff's "angry refusal to resubmit the requested materials," which the agency received but ultimately lost, contradicted any argument of good faith effort to comply with administrative procedures) (citation and internal quotation marks omitted). Courts within the Tenth Circuit have routinely cited to Khader to find that a claimant who begins an administrative procedure but abandons it to file suit in federal court fails to exhaust her administrative remedies, and accordingly, is jurisdictionally barred from suit. See, e.g., Laughter v. Gallup Indian Medical Center , 425 Fed.Appx. 683, 686 (10th Cir. 2011) ("Abandoning a complaint of discrimination filed with an employing agency prior to the agency's final action on the complaint constitutes a failure to exhaust") (citing Khader , 1 F.3d at 971 ).
In 2005, the Tenth Circuit reaffirmed its position, within the context of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., that a complainant's failure to cooperate in the EEO's investigation of his charge constituted a failure to exhaust administrative *1093 remedies that deprived the district court of subject matter jurisdiction. Shikles v. Sprint/United Management Co. , 426 F.3d 1304 (10th Cir. 2005). The court stated that "when a plaintiff's non-cooperation effectively prevents the EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially becomes a sham or meaningless proceeding[,] [ ] a charging party's non-cooperation will amount to a failure to exhaust administrative remedies." Id. at 1311. In turn, the Shikles court concluded that the failure to exhaust administrative remedies was a jurisdictional bar to suit. In so holding, the court relied on precedent from two other Circuits and several federal district courts. Id. at 1312 (citing Rann v. Chao , 346 F.3d 192, 196 (D.C. Cir. 2003) (dismissing case for lack of jurisdiction, finding that plaintiff was not only uncooperative, the agency had dismissed the administrative complaint due to the lack of cooperation) (further citations omitted). In its discussion, the court acknowledged both the EEOC's amicus curie brief that an employee's failure to cooperate with the EEOC during the administrative process does not preclude him from later proceeding against his employer in court, id. at 1315-16, and the Supreme Court's guidance that courts not read into Title VII and the ADEA "procedural prerequisites to suit that are not expressly provided in the text of the statute." See id. at 1314.
The Seventh Circuit disagreed with Shikles the following year, and observed that the statutory language contained no requirements to filing suit other than timely filing an EEOC charge and timely filing suit following the right to sue letter:
There is...no basis in the language of Title VII for that position. The Tenth Circuit acknowledged the Supreme Court's "admonition that no requirements beyond those in the statute should be imposed" ... but it imposed them anyway. So the Tenth Circuit's gloss on Title VII is confessedly adventurous, and this will distress originalists. It is also in severe tension with the Supreme Court's recent observation, concerning the "exhaustion" provisions in both Title VII and the Age Discrimination in Employment Act, that "neither of these provisions makes reference to the concept of exhaustion, and neither is in any sense an exhaustion provision." Woodford v. Ngo , 548 U.S. 81, 126 S.Ct. 2378, 2390, 165 L.Ed.2d 368 (2006). Title VII imposes procedural requirements as a precondition to bringing a suit in federal court that is an original proceeding rather than one to review agency action. Doe satisfied all those requirements. Title VII does not incorporate anything like the full apparatus of exhaustion, an apparatus designed as we have noted for cases in which judicial review of an adjudication or a rule is sought.
Doe v. Oberweis Dairy , 456 F.3d 704, 710 (7th Cir. 2006). See also Mohamed v. 1st Class Staffing, LLC , 286 F.Supp.3d 884, 897-99, 2017 WL 6383611, at *10-11 (S.D. Ohio Dec. 14, 2017) (discussing Shikles and Oberweis and applying the rationale articulated in Oberweis ).
Almost ten years later, in 2015, the Tenth Circuit determined that Title VII's verification requirement that a claimant verify the charges against an employer is not a jurisdictional requirement, but rather a non-jurisdictional condition precedent to suit that can be waived. Gad v. Kansas State University , 787 F.3d 1032 (10th Cir. 2015). In so holding, the court relied on a series of Supreme Court decisions, beginning with Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), in which the Court determined that the statutory time limit for filing EEOC charges was subject to waiver and estoppel, and culminating with *1094 United States v. Kwai Fun Wong, --- U.S. ----, 135 S.Ct. 1625, 1632, 191 L.Ed.2d 533 (2015), in which the Supreme Court advised that "procedural rules ... cabin a court's power only if Congress has 'clearly state[d]' as much." Id. at 1037-40. From these cases the Gad court distilled a key principle that "a Title VII statutory requirement's classification as jurisdictional or non-jurisdictional turns in large part on whether it is located in Title VII's jurisdictional subsection- 42 U.S.C. § 2000e-5(f)(3)." Id. at 1038.
The Gad court cast doubt on the Khader and Shikles holdings that failure to exhaust administrative remedies is a jurisdictional issue. However, Gad addressed only Title VII's verification requirement; and while the court observed that "the subsequent development of the law underscores the limited force our earlier cases retain today," it did not expressly overturn Shikles . Id. at 1040. See Wickware v. Manville , 676 Fed.Appx. 753, 767 & n.4 (10th Cir. 2017) (acknowledging on review of an order of summary judgment that " Gad raises the question of whether the district court's jurisdictional rationale here remains legally viable," but stating that "even if exhaustion is not jurisdictional, it is a condition precedent to suit"); Hung Thai Pham v. James , 630 Fed.Appx. 735, 738 (10th Cir. 2015) (reviewing Rule 12(b)(1) dismissal of Title VII complaint and declining to address whether exhaustion of administrative remedies is jurisdictional on basis that defendant had "not waived or forfeited the issue," noting that the court may affirm dismissal "on a rationale different from the district court's"); Arabalo v. City of Denver , 625 Fed.Appx. 851, 859-60 (10th Cir. 2015) (declining to decide the impact of Gad on the Circuit's "earlier decisions concluding we lacked subject-matter jurisdiction for other failures to meet Title VII's requirements," agreeing that plaintiff was required to first assert certain allegations to the EEOC as a condition precedent to suit, if not a jurisdictional prerequisite).
Since Gad , at least two of our sister courts have recognized the tension within the applicable Circuit law. See Moreno v. Kansas City Steak Company, LLC , No. 17-cv-02029-DDC-KGS, 2017 WL 2985748, at *3 (D. Kan. July 13, 2017) ; Dolin v. ThyssenKrupp Elevator Corporation , 2:16-cv-00529-MCA-GBW, 2017 WL 1551990, at *3-4 (D.N.M. Mar. 31, 2017) (putting aside the jurisdictional question and dismissing claim for plaintiff's failure to assert it in the EEOC charge). Like the Moreno court, while mindful of the questionable status of Shikles as good law, "[t]his court is bound by the published Tenth Circuit decisions unless they have been overruled by the Tenth Circuit sitting en banc or superseded by a contrary Supreme Court decision." Moreno , 2017 WL 2985748, at *3 (citations omitted). See, e.g., In re Smith , 10 F.3d 723, 724 (10th Cir. 1993) (citing United States v. Spedalieri , 910 F.2d 707, 710 n.3 (10th Cir. 1990) (a three-judge panel cannot overrule circuit precedent)) (further citation omitted). Accordingly, despite its hesitation given the subsequent development of Supreme Court case law, the court applies here the rule of law as stated in Shikles and Khader , and finds under a Rule 12(b)(1) standard of review that Plaintiff's failure to cooperate in the EEOC investigation and subsequent proceedings divests the court of subject matter jurisdiction.
II. Application
A. Title VII Claim
The record before the court demonstrates that Ms. Cirocco filed the EEO Complaint on February 3, 2015. [# 7-2]. In the EEO Complaint, Ms. Cirocco alleged that in December 2014 Mr. Gribben discriminated against her in the FY14 performance on account of her sex, and retaliated against her for "her efforts to comply with the Federal Managers' Financial Integrity *1095 Act of 1982 (FMFIA) and the 'Standards for Internal Control in the Federal Government.' " [Id. at 5, 6]. On February 26, 2015, the SBA issued to Plaintiff a Notice of Partial Acceptance/Dismissal (the "Notice"). [# 7-3]. The Notice explained that the SBA had accepted for investigation a single issue: "Whether Complainant was discriminated against on the basis of sex (Female), when on December 10, 2014, she learned that her FY2014 performance rating of three (3) was submitted as a final rating to OHRS." [Id. at 2]. The Notice also explained that Plaintiff's claim for retaliation was dismissed because Plaintiff had "failed to identify a specific harm to a term, condition, or privilege of your employment where you suffered a direct, personal deprivation at the hands of the employer on a basis covered by EEO statutes." [Id. at 5].
The EEO assigned investigation of Ms. Cirocco's claim to Ralph Gay, who contacted Ms. Cirocco on May 28, 2015. [# 7-4 at 2]. Mr. Gay wrote in a memorandum to file that Ms. Cirocco advised she had taken leave pursuant to the Family Medical Leave Act and was not physically well enough to participate in an interview. [Id. ] Mr. Gay subsequently corresponded with Ms. Cirocco on several occasions in an effort to schedule an interview, and wrote that Ms. Cirocco ultimately informed him on August 24, 2015, that "it would be too stressful to be deposed and that her doctor had not cleared her to be deposed." [Id. ] Mr. Gay thereafter "conclude[d] the investigation without [Plaintiff's] input," [id. at 3], and, after the Report of Investigation was issued, the parties sought a hearing before the ALJ. [# 7-1 at ¶ 11].
On February 6, 2017, the ALJ held a telephonic conference in which Plaintiff and her counsel participated, as did Mr. Gery. [# 7-1 at ¶ 12]. The ALJ issued an order identifying the single claim, stated above, and directing the parties to initiate discovery within twenty days and complete discovery by May 12, 2017. [Id. at ¶¶ 13-14]. Mr. Gery thereafter sent initial discovery requests to Plaintiff's counsel; the SBA did not receive Plaintiff's responses and Plaintiff never served discovery on the SBA. [Id. at ¶¶ 15, 17-18]. On June 16, 2017, Mr. Gery filed a Motion for Decision Without a Hearing, to which Plaintiff failed to respond. [Id. at ¶¶ 19, 20]. On June 29, 2017, Plaintiff initiated this action, and filed with the EEOC a Notice of Commencement of Civil Suit. [Id. at ¶ 22]. On July 7, 2017, the ALJ issued an order dismissing Plaintiff's case before the EEOC on the grounds that Plaintiff had filed this lawsuit. [Id. at ¶ 23; # 7-5]. Based on this record, the court finds that Ms. Cirocco failed to cooperate with the EEOC investigation, and thus failed to exhaust her administrative remedies.
The court notes that Ms. Cirocco filed a pro se Response, in which she references her former counsel's efforts to negotiate with opposing counsel and asserts a number of allegations that relate to the merits of her claims. See [# 23]. In relevant part, Ms. Cirocco states that her "former attorney advised me to file my case in federal court after discussions with SBA attorneys," and that her attorney "did not believe the SBA attorney's acted in good faith with him [sic]." [Id. at 2]. Ms. Cirocco also details the retaliation she allegedly endured after she filed her EEO Complaint. Finally, she represents that she is "out resourced at this point," that her "attorney has said it could cost up to $100k to pursue this case," and "[s]ince I am only looking to be made whole with the time I was forced to take in medical leave and I would like to retire soon, I simply cannot proceed with this expense." [Id. at 3]. Notably, however, Ms. Cirocco does not address Defendant's contention that she failed to participate both in Mr. Gay's investigation and the proceedings before the *1096 ALJ. As a pro se litigant, Ms. Cirocco is entitled to a liberal construction of her Response; however, the court is not tasked with articulating the pertinent arguments on her behalf. Neither legal training nor expertise is required for Plaintiff to describe her version of events with respect to what transpired during the EEOC investigation and before the ALJ.[4] For these reasons, I find Plaintiff fails to demonstrate the court has subject matter jurisdiction over her Title VII claim.[5]
B. Retaliation Claim
Ms. Cirocco's claim for retaliation claim similarly fails for lack of jurisdiction because it was not included in the underlying EEOC proceedings. Administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation. Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194-95 (10th Cir. 2004). It is undisputed that the SBA accepted only the Title VII claim for investigation: "Whether Complainant was discriminated against on the basis of sex (Female), when on December 10, 2014, she learned that her FY2014 performance rating of three (3) was submitted as a final rating to OHRS." [# 7-3 at 2]. The SBA explained in the Notice that Plaintiff's claim for retaliation was dismissed because Plaintiff had "failed to identify a specific harm to a term, condition, or privilege of your employment where you suffered a direct, personal deprivation at the hands of the employer on a basis covered by EEO statutes." [Id. at 5]. The governing regulations permit the agency to dismiss some but not all of the claims in a complaint, and advise that such a determination "is reviewable by an administrative judge if a hearing is requested on the remainder of the complaint, but is not appealable until final action is taken on the remainder of the complaint." 29 C.F.R. § 1614.107(b). See id. at §§ 1614.401(a), 1614.402 ("a complainant may appeal an agency's final action or dismissal of a complaint," and any such appeal must be filed "within 30 days of receipt of the dismissal, final action or decision"). See also id. at § 1614.407(c)(d) (providing that a complainant may file an action in federal court within 90 days of *1097 receipt of Commission's final decision on appeal, or after 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission). Plaintiff does not allege that she sought review of the SBA's decision from the ALJ or further appealed the ALJ's dismissal of the action; accordingly, Plaintiff cannot pursue that retaliation claim in federal court.
Additionally, in her Response, Plaintiff discusses the particulars of the retaliation she experienced after she filed her EEO Complaint. See [# 23 at 2-3]. However, federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the EEOC, and Plaintiff does not allege that she filed either a supplement to her EEO Complaint or a new EEO Complaint raising the allegations of retaliation that occurred subsequent to the filing of her initial Complaint. See Eisenhour v. Weber Cty. , 744 F.3d 1220, 1227 (10th Cir. 2014) ("federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents") (citing 29 C.F.R. § 1601.12(b) ). Each act of retaliation must be separately exhausted, even when acts that post-date the EEO complaint reasonably relate to others presented to the EEOC. Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (noting this policy was particularly important where plaintiff claimed an ongoing pattern of retaliation, as Ms. Cirocco claims here). Additionally, to the extent the retaliation claim is ancillary to the Title VII claim, the court has jurisdiction to hear it only when the main administrative charge is properly before the court. Jones v. Runyon , 91 F.3d at 1402 (citing Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 479 (5th Cir. 1991) ("because one of plaintiff's ADEA claims was untimely and the other had not been presented first to the EEOC, claims were not properly before the court and retaliation charge had 'no charge on which to attach itself,' therefore, court had no jurisdiction over retaliation claim"). For these reasons, the court lacks subject matter jurisdiction over Plaintiff's retaliation claim.
CONCLUSION
For the foregoing reasons, IT IS ORDERED that:
(1) Defendant Linda McMahon's Motion to Dismiss [# 7] is GRANTED ; and
(2) This action is DISMISSED without prejudice.
Attachment
2017 WL 2985748
Only the Westlaw citation is currently available.
United States District Court,
D. Kansas.
Paula MORENO, Plaintiff,
v.
KANSAS CITY STEAK COMPANY, LLC, Defendant.
Case No. 17-cv-02029-DDC-KGS
Signed 07/13/2017
Attorneys and Law Firms
Mark E. Meyer, The Law Offices of Mark E. Meyer, Lee's Summit, MO, for Plaintiff.
Kyle B. Russell, Jackson Lewis PC, Overland Park, KS, for Defendant.
Opinion
MEMORANDUM AND ORDER
Daniel D. Crabtree, United States District Judge *1098 *1 On January 17, 2017, plaintiff Paula Moreno filed a Complaint alleging four claims against defendant Kansas City Steak Company, LLC. Doc. 1. In Counts One through Three, plaintiff asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. In Count Four, plaintiff asserts a claim under the Kansas Workers Compensation Act, Kan. Stat. Ann. § 44-501 et seq.
On April 7, 2017, defendant filed a Motion for Partial Dismissal of Plaintiff's Complaint. Doc. 6. In it, defendant contends that the court must dismiss Counts One through Three because plaintiff failed to exhaust her administrative remedies. The court agrees. For the reasons explained below, the court denies defendant's Motion for Partial Dismissal of Plaintiff's Complaint and also grants plaintiff leave to file an amended complaint. The amended pleading must address the jurisdictional issues addressed in this Order.
Background [1]
Plaintiff worked for defendant from March 2009 to March 2015. In April 2012, plaintiff's work gloves caught in a conveyor belt, injuring the smallest finger on her right hand to the point that one of the joints was immovable. Plaintiff received medical attention for her injury through workers compensation benefits, and began using a splint at work per her doctor's orders.
Over time, plaintiff's injury worsened. She began experiencing intermittent muscle and tendon pain in her right hand, wrist, and forearm. Eventually, the pain spread to her shoulder. Worker's compensation again allowed plaintiff to seek medical attention. But, when plaintiff's treating physician advised her to see a hand specialist, defendant refused and would not allow her to seek further treatment. Plaintiff told defendant about her continuing pain and discomfort several times between 2012 and 2014.
Plaintiff's supervisor questioned whether plaintiff truly was injured and the supervisor got angry with her. Plaintiff's supervisor physically pushed plaintiff twice, "yelling at [her] for using her left hand instead of her injured right hand." Doc. 1 at 5. Some time later, plaintiff went to human resources to inform them of the pushing incident and to complain, again, about her continuing injury. Plaintiff alleges that human resources told her "that if she made a report she would not be able to work for" defendant. Id.
On March 26, 2015, following another unpleasant interaction between plaintiff and her supervisor, defendant terminated plaintiff's employment. Believing she was terminated for discriminatory reasons, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("the EEOC") and the Kansas Human Rights Commission ("the KHRC"). Where her KHRC Charge ("the Charge") asks what "unlawful employment practice" she alleged defendant employed in violation of the Kansas Acts Against Discrimination, Kan. Stat. Ann. § 44-1001 et seq. , plaintiff checked the boxes for race, color, national origin, disability, and retaliation. Doc. 2 at 4.
*2 Plaintiff's Charge alleged only the following facts: she worked for defendant from March 16, 2009, to March 27, 2015, and her last position was in packaging; she is from Mexico; her son has a disability; defendant knew about her son's disability starting in March 2009; her supervisor *1099 physically harassed her on December 23, 2014, by pushing her twice; and that defendant terminated her employment on March 27, 2015, because of her national origin and her "association with [her] son, who has a disability." Id. at 4-5.
The EEOC issued plaintiff a Right to Sue Letter on October 20, 2016. She then filed this lawsuit. Her Complaint alleges that defendant violated the ADA by failing to accommodate her disability (i.e. , her injured finger), by retaliating against her for seeking accommodations, and by physically harassing her and disciplining her because of her disability. The Complaint also alleges a retaliation claim under the Kansas Workers Compensation Act.
Defendant has filed a Motion for Partial Dismissal. In its Motion, defendant contends that plaintiff's ADA claims exceed the scope of her Charge, and so plaintiff has failed to exhaust her administrative remedies as the ADA requires. The court considers the parties' arguments below.
Analysis
Defendant's Memorandum in Support its Motion (Doc. 7) and Reply (Doc. 10) present a threshold procedural question that the court must decide before it can begin to analyze the parties' arguments. While defendant labels its motion to dismiss as one under Federal Rule of Civil Procedure 12(b)(6), the legal standards section of its Memorandum in Support begins with the following propositions: "Federal courts are courts of limited jurisdiction. Under the ADA, a plaintiff must exhaust administrative remedies before filing suit. 'In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.' Thus, a district court must dismiss unexhausted claims for lack of subject matter jurisdiction." Doc. 7 at 4 (citations omitted). This language invokes Rule 12(b)(1). Defendant then continues, mentioning-albeit briefly-the legal standard for a Rule 12(b)(6) motion. Defendant's Reply does not clarify its intentions. See Doc. 10 at 8 ("KCSC argues that Plaintiff did not exhaust her administrative remedies at all -whether her Charge was verified or not-with respect to any claims based on her own disability, which clearly is a jurisdictional requirement." (citation omitted)). So, defendant's papers alone do not permit the court to discern whether defendant brings a Rule 12(b)(1) or Rule 12(b)(6) motion.
But the court must determine which subdivision of the Rule applies because "[d]ifferent standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Muscogee (Creek) Nation v. Pruitt , 669 F.3d 1159, 1167 (10th Cir. 2012). If the question presented by defendant's motion truly is a jurisdictional one,[2] then the court may not reach any aspect of the merits of plaintiff's Complaint under a Rule 12(b)(6) motion. As the Supreme Court explained in Bell v. Hood :
*3 [I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of *1100 action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.
327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ; accord Oppenheim v. Sterling , 368 F.2d 516, 520 n.16 (10th Cir. 1966). So, typically, the court may dismiss a complaint for failing to state a claim for relief only after it has found that subject matter jurisdiction exists. Id. The court thus must determine whether defendant's motion presents a motion to dismiss under Rule 12(b)(6) or Rule 12(b)(1) before it properly can consider any aspect of the parties' merit arguments. See Muscogee (Creek) Nation , 669 F.3d at 1167 (holding that a district court erred by equating the Rule 12(b)(6) and Rule 12(b)(1) standards when it applied the Rule 12(b)(6) plausibility standard to the determination whether it had subject matter jurisdiction).
Despite the Rule 12(b)(6) label defendant places on its Motion to Dismiss, the court must construe it as a motion under Rule 12(b)(1) if the question it presents is jurisdictional. In other words, if the question whether the court should dismiss plaintiff's Complaint for failure to exhaust her administrative remedies is jurisdictional, then the court must consider defendant's motion as one under Rule 12(b)(1). To decide this question, the court relies on ADA and Title VII cases because, as the Tenth Circuit has noted, "Title I of the ADA, which prohibits employment discrimination on the basis of disability, explicitly incorporates the powers, remedies, and procedures of Title VII, making [it] clear that the procedural requirements of those two provisions must be construed identically." Shikles v. Sprint/United Mgmt. Co. , 426 F.3d 1304, 1309 (10th Cir. 2005) (citing 42 U.S.C. § 12117(a) ).
In Shikles v. Sprint/United Management Co. , the Tenth Circuit held that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII-not merely a condition precedent to suit." Id. at 1317 (citing Jones v. Runyon , 91 F.3d 1398, 1399 n.1 (10th Cir. 1996) ). In the years after Shikles , the Circuit has questioned the vitality of the case's holding. See, e.g. , Wickware v. Manville , 676 Fed.Appx. 753, 767 & n.4 (10th Cir. 2017) (mentioning that the holding in Shikles may not be good law still, but not resolving the question and instead stating that "[c]onsequently, even if exhaustion is not jurisdictional, it is a condition precedent to suit" (citations omitted)); Hung Thai Pham , 630 Fed.Appx. at 737-38 (discussing whether Shikles 's holding was still good law, but declining to decide the issue and noting instead that "even if exhaustion is not jurisdictional, this Title VII requirement is vital," so "even if the exhaustion requirement is deemed to be a condition precedent to suit, we conclude that by indisputably failing to exhaust, Mr. Pham has failed to satisfy this condition" (citations omitted)); Arabalo v. City of Denver , 625 Fed.Appx. 851, 859-60, 864 (10th Cir. 2015) (mentioning that the holding of Shikles may not be good law still, but not resolving the question). The questions about the continuing vitality of Shikles arise from the Tenth Circuit's decision in Gad v. Kansas State University , 787 F.3d 1032 (10th Cir. 2015). But Gad did not overrule Shikles -at least not explicitly. Instead, the Circuit's decision in Gad appears limited to the question before it in that case: whether the EEOC's verification requirement is jurisdictional. Gad , 787 F.3d at 1038-40.
Although the court is mindful of concerns about Shikles 's status after Gad , "[t]his court is bound by the published Tenth Circuit decisions unless they have *1101 been overruled by the Tenth Circuit sitting en banc or superseded by a contrary Supreme Court decision." Brand v. Mazda Motor Corp. , 978 F.Supp. 1382, 1392 (D. Kan. 1997) (first citing Haynes v. Williams , 88 F.3d 898, 900 n.4 (10th Cir. 1996) ; then citing United States v. Spedalieri , 910 F.2d 707, 709 n.2 (10th Cir. 1990) ; then citing Morris v. State of Kan. Dep't of Revenue , 849 F.Supp. 1421, 1428 (D. Kan. 1994), abrogated on other grounds , Burns v. Bd. of Comm'rs of Cty. of Jackson, Kan. , 197 F.Supp.2d 1278 (D. Kan. 2002) ). The Tenth Circuit has not overruled Shikles en banc, and the Supreme Court has not decided a case explicitly contrary to Shikles 's holding. So, the court believes it is still bound to follow Shikles 's holding.
*4 The court thus concludes that defendant's motion to dismiss, in reality, is a Rule 12(b)(1) motion and so it considers defendant's motion under the legal standard outlined in the next section.
I. Legal Standard
The court must dismiss any case that it lacks subject matter jurisdiction to hear. Fed. R. Civ. P. 12(h)(3). The court must do so because "[a] court lacking jurisdiction cannot render judgment." Basso v. Utah Power & Light Co. , 495 F.2d 906, 909 (10th Cir. 1974) (citing Bradbury v. Dennis , 310 F.2d 73, 74 (10th Cir. 1962) ). The party who invokes the court's jurisdiction bears the burden to establish that it exists. Id. Here, that party is plaintiff.
Generally, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) takes one of two forms: a facial attack or a factual attack. Holt v. United States , 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack questions the sufficiency of the jurisdictional allegations in a plaintiff's complaint. Id. "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." Id. (citing Ohio Nat'l Life Ins. Co. v. United States , 922 F.2d 320, 325 (6th Cir. 1990) ). In contrast, a factual attack goes beyond the complaint's allegations and challenges "the facts upon which subject matter jurisdiction depends." Id. at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." Id. (citing Ohio Nat'l Life Ins. Co. , 922 F.2d at 325 ). In this context, a district "court has wide discretion to allow affidavits, other documents, and [even conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Id. (citations omitted). So, "[i]n a factual attack under Rule 12(b)(1), the court's reference to evidence outside the pleadings does not convert the motion into a motion for summary judgment, unless the jurisdictional question is intertwined with the merits of the case." Shipley v. I.R.S. , No. 04-cv-2573-JWL, 2005 WL 1334617, at *1 (D. Kan. June 6, 2005) (first citing Stuart v. Colo. Interstate Gas Co. , 271 F.3d 1221, 1225 (10th Cir. 2001) ; then citing Holt , 46 F.3d at 1003 ; then citing Wheeler v. Hurdman , 825 F.2d 257, 260 (10th Cir. 1987) ); Sizova v. Nat'l Inst. of Standards & Tech. , 282 F.3d 1320, 1324-25 (10th Cir. 2002).
Here, some question exists whether defendant's motion presents a facial or factual attack. Plaintiff contends that defendant's motion strays beyond the Complaint and thus questions facts. Defendant disagrees. It contends that its motion only questions the sufficiency of the Complaint's jurisdictional allegations. In reality, defendant's motion melds the two approaches.
At first glance, it looks like a factual attack. Defendant attaches an exhibit to its Memorandum in Support. Doc. 7-1. Typically, this approach signals that defendant is making a factual attack challenging the *1102 complaint's jurisdictional allegations. Cf. Shipley , 2005 WL 1334617, at *1 ("Here, Defendant chose to make a factual attack by offering exhibits [to] support its motion." (footnote and citation omitted)). But here, closer inspection leads the court to a different conclusion.
*5 The exhibit attached to defendant's Memorandum in Support does not challenge any of the Complaint's jurisdictional allegations. Instead, the exhibit merely submits plaintiff's EEOC and KHRC administrative charges. See Doc. 7-1; see also Doc. 1 at 6-7 (referencing exhibits to the Complaint). But defendant's motion relies only on plaintiff's KHRC Charge and plaintiff already had appended this Charge as an exhibit to her Complaint. Doc. 2 at 4-5 ("EXHIBITS IN SUPPORT of Complaint") (filed by plaintiff). Federal Rule 10(c) makes that exhibit part of plaintiff's Complaint. See Mountain Fuel Supply Co. v. Johnson , 586 F.2d 1375, 1382 (10th Cir. 1978) ("We first observe that any contention that a substantial federal question was not set forth 'on the face' of the Mountain Fuel complaint is without merit. [Rule 10(c) ] provides that 'A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.' " (citations omitted)); accord City of Rome, N.Y. v. Verizon Commc'ns, Inc. , 362 F.3d 168, 175 n.4 (2d Cir. 2004). Plaintiff's EEOC Charge is not part of her Complaint. She did not attach it to the Complaint and objects to defendant's reliance on it here. See Gee v. Pacheco , 627 F.3d 1178, 1186 (10th Cir. 2010) (listing exceptions to the rule against looking beyond the four corners of the pleadings). But, defendant does not rely on plaintiff's EEOC Charge.
Because defendant's motion does not rely on any material outside the pleadings, it presents a facial attack. This conclusion means that the court applies "the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss." Muscogee (Creek) Nation v. Okla. Tax Comm'n , 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). So, the court accepts the allegations in plaintiff's Complaint as true. But, where the Complaint's allegations are legal conclusions or contradict information contained in the documents attached to it, no such presumption of truth attaches. See GFF Corp. v. Associated Wholesale Grocers, Inc. , 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining that the court need not accept "legal conclusions and factual allegations that contradict ... a properly considered document" as true (citing Jackson v. Alexander , 465 F.2d 1389, 1390 (10th Cir. 1972) )).
Last, plaintiff's decision to attach the EEOC's Right to Sue Letter and her KHRC Charge to her Complaint provides something of a governor on the Complaint's allegations. In GFF Corp. v. Associated Wholesale Grocers, Inc. , the Circuit explained that district courts need not accept factual allegations as true if they contradict a "properly considered document." Id. (citation omitted).
II. Exhaustion
"Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." Jones v. U.P.S., Inc. , 502 F.3d 1176, 1183 (10th Cir. 2007) (citations omitted). To determine whether a plaintiff has exhausted her administrative remedies, the court uses a two-step test. Id. at 1183, 1186. In the first step, the court asks whether the plaintiff has filed a charge of discrimination with the EEOC. Id. at 1183. In the second, the court must "determine the scope of the allegations raised in the EEOC charge because '[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow *1103 the charge of discrimination submitted to the EEOC.' " Id. at 1186 (quoting MacKenzie v. City & Cty. of Denver , 414 F.3d 1266, 1274 (10th Cir. 2005) ; further citation omitted). Here, defendant concedes that plaintiff has satisfied step one. But, defendant contends that her ADA claims cannot survive step two.
In step two, the court liberally construes plaintiff's Charge. Id. But, plaintiff's Charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.' " Id. (quoting Martinez v. Potter , 347 F.3d 1208, 1210 (10th Cir. 2003) ). So, the court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge." Id. (emphasis in original).
*6 Here, plaintiff principally submitted her charge of discrimination to a state administrative agency-the KHRC. See Doc. 7-1 at 3-4 (assigned KHRC docket No. 38214-16). She then provided notice to the EEOC of her state charge filing, notifying this federal agency that her federal submission was made under the EECO's "dual filing" procedure. Id. at 2.[3]
Plaintiff's KHRC Charge identified the "unlawful employment practice" that she alleged defendant had committed. Plaintiff checked the boxes identifying race, color, national origin, disability, and retaliation as the types of discrimination claimed. Doc. 2 at 4. Plaintiff's Charge alleged only the following facts: she worked for defendant from March 16, 2009, to March 27, 2015, and her last position was in packaging; she is from Mexico; her son has a disability; defendant knew about her son's disability starting in March 2009; her supervisor physically harassed her on December 23, 2014, by pushing her twice; and that defendant terminated her employment on March 27, 2015, because of her national origin and her "association with [her] son, who has a disability." Id. at 4-5.
In her Complaint, plaintiff alleges three claims under the ADA. She bases all three claims on her own disability-which was caused by a workplace injury in April 2012. This Complaint never mentions her son. Plaintiff's Charge exhausted only an ADA claim based on her association with her son's disability. But her Charge never alleges that she, herself, has a disability, or that she suffered adverse employment actions because of her disability. Her Charge therefore does not contain facts about the discrete incident of discrimination and retaliation relied on by Counts One through Three of her Complaint. No "administrative investigation [could] reasonably be expected to follow from" plaintiff's administrative allegations about her son's disability to plaintiff's judicial allegations that she was disabled. Jones , 502 F.3d at 1183, 1186 ; see also Andrews v. GEO Grp., Inc. , 288 Fed.Appx. 514, 518 (10th Cir. 2008) (finding that the plaintiff *1104 did not exhaust her job-modification claims because her administrative "filing [was] devoid of any facts concerning such a request").
Sensing her predicament, plaintiff asks the court to consider, in addition to her Charge, a disability questionnaire that she filled out after filing her Charge with the KHRC. Defendant objects to plaintiff's use of the questionnaire, arguing that the court cannot consider the questionnaire without converting defendant's motion into one for summary judgment. This argument creates a dilemma that the court cannot resolve from the current record. On one hand, defendant argues, correctly, that the court cannot consider the contents of the administrative questionnaire because plaintiff's Complaint does not allege it or otherwise invoke it under Rule 10(c). See Pacheco , 627 F.3d at 1186 (listing exceptions to the rule against looking beyond the four corners of the pleadings). On the other hand, plaintiff may not have alleged that the questionnaire's contents provided a platform to establish the jurisdictional requisite-administrative exhaustion-because she did not know that defendant would challenge her administrative charge's sufficiency for that requisite.
*7 In the end, the court concludes that it is not proper to resolve this dilemma on the current motion. The parties' filings manifest one dispute, in particular, that leads the court to this conclusion. Plaintiff contends that a KHRC questionnaire establishes that she exhausted her claims based on her own alleged disability. And, indeed, the Circuit's most recent comment on this idea- Jones v. Needham -leaves room for this argument to succeed. See 856 F.3d 1284, 1290 (10th Cir. 2017) ("[T]here are times in which a different filing such as an intake questionnaire, can constitute [an administrative] charge for certain purposes." (citations omitted)). While the "general rule" remains that the administrative charge defines the scope of the administrative investigation, id. , Needham recognizes that exceptions to this general rule still exist. Also, defendant's Reply raises a series of unanswered questions. Did defendant receive the questionnaire before plaintiff filed this lawsuit? And, if not, does that matter?
The court concludes that it should not decide questions so central to the case[4] on a record as unsettled as the one presented by the current motion to dismiss. The court denies the current motion because it concludes that the current record is insufficient to decide the first question in every federal court case: Does subject matter jurisdiction exist? On its own motion, then, the court grants plaintiff leave to amend her Complaint. The court establishes a comprehensive schedule at the end of this order. Plaintiff's amended complaint must plead sufficient material so the court can decide whether its jurisdiction reaches plaintiff's claims. This obligation includes each fact she relies on to establish administrative exhaustion and thus, jurisdiction. If defendant contends that plaintiff's amended allegations do not suffice to establish exhaustion, it may renew its motion to dismiss. If defendant believes the new *1105 filing establishes jurisdiction-for the moment, anyway-it should file an Answer. If defendant renews its motion to dismiss, the parties' filings should discuss the implications of the Circuit's decision in Needham , a case decided after briefing on the current motion concluded.
The following interim schedule governs the proceedings in this case:
(1) No later than 10 days from the date of this Order, plaintiff must file an amended complaint alleging all facts she relies on to establish subject matter jurisdiction.
(2) Within 15 days of plaintiff filing her amended complaint, defendant may file a renewed motion to dismiss challenging the jurisdictional sufficiency of plaintiff's amended allegations. If defendant elects not to file such a motion to dismiss, it must file a timely Answer.
(3) Within 15 days of any new motion to dismiss filed by defendant, plaintiff must file her Opposition to the motion.
(4) Defendant must file any Reply within 10 days of plaintiff's Opposition.
Finally, consistent with Rule 1's mandate that the court must apply the Federal Rules of Civil Procedure to promote the just, speedy, and inexpensive resolution of every civil case, the court stays discovery and all other pre-trial proceedings until the jurisdictional questions are resolved. If defendant does not file a renewed motion to dismiss, the parties are directed to notify Deputy Clerk Megan Garrett (by email at KSD_Crabtree_Chambers@ksd.uscourts.gov) so that the court can lift the stay and return the case to normal case-management procedures.
*8 IT IS THEREFORE ORDERED THAT defendant Kansas City Steak Company, LLC's Motion for Partial Dismissal of Plaintiff's Complaint (Doc. 6) is denied.
IT IS FURTHER ORDERED THAT plaintiff must file an amended complaint within 10 days of the date of this Order.
IT IS SO ORDERED.
All Citations
Slip Copy, 2017 WL 2985748
2017 WL 1551990
United States District Court,
D. New Mexico.
LJ DOLIN, Plaintiff,
v.
THYSSENKRUPP ELEVATOR CORPORATION, Defendant.
No: 2:16-cv-00529-MCA-GBW
Signed 03/31/2017
Attorneys and Law Firms
Amelia P. Nelson, Rio Grande Attorneys at Law, PC, Albuquerque, NM, for Plaintiff.
Frank Leo Kollman, Joseph Garrett Wozniak, Kollman & Saucier, PA, Timonium, MD, for Defendant.
Opinion
Memorandum Opinion and Order
M. CHRISTINA ARMIJO, CHIEF UNITED STATES DISTRICT JUDGE
*1 THIS MATTER is before the Court upon Defendant ThyssenKrupp Elevator Corporation's (TKE's) Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion ), filed on June 5, 2016. [Doc. 7] Plaintiff L.J. Dolin (Dolin) responded on August 19, 2016. [Doc. 13] TKE replied on September 2, 2016. [Doc. 15] The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the *1106 Court GRANTS TKE's Motion as to Dolin's hostile-work-environment claim. The Court DENIES TKE's Motion in all other respects.
I. Background
TKE manufactures, installs, and services elevators throughout the United States. [Doc. 7-1, pg. 3 (asserting this fact); Doc. 13 (not disputing this fact) ] Its mechanics who maintain those elevators are represented by the International Union of Elevator Constructors (IUEC). [Id. ] The IUEC and TKE entered into a Collective Bargaining Agreement (CBA) which governs wages and employment of those mechanics. [Id. ] In addition, "Local Representative (LR)" agreements govern mechanics who work in remote locations and provide for additional terms and conditions of employment. [Id. ] Dolin worked in such a remote location and was subject to an LR agreement. [Doc. 7-1, pg. 3 (referencing the LR agreement applicable to Dolin); Doc. 13, pg. 3 (not disputing this fact) ]
The LR agreement governing Dolin in 2008 included a wage provision stating that
[t]he Employee will be paid based upon the Local No. 131 wage rate in accordance with the prevailing wages, fringes, and Local Expense Agreement negotiated between the Company and the Local., [sic] During the first six (6) months of this assignment, she will be paid six-percent (6%) above the mechanic rate and shall thereafter be paid twelve and one-half (12.5%) above scale as long as she is assigned to the Roswell, NM Local Office.
[Doc. 7-3; see also Doc. 13, Ex. A, pg. 5 (2009 local office assignment with the same provision) ] Dolin was paid consistently with this provision until March, 2010, when she was terminated. [Doc. 7-1, pg. 4 (stating this fact); Doc. 13, pg. 3 (not disputing this fact) ]
In April, 2010, Dolin filed a complaint with the New Mexico Department of Workforce Solutions/Equal Employment Opportunity Commission (EEOC) alleging wrongful termination on the basis of sex and sexual orientation. [Doc. 7-1, pg. 4 (stating this fact); Doc. 13, pg. 3 (not disputing this fact) ] The parties settled the dispute in August, 2010. As part of the settlement, Dolin agreed to withdraw her complaint and the New Mexico Department of Workforce Solutions closed its file related to Dolin's charge. [Doc. 7-1, pg. 4 (stating that the file was closed); Doc. 13, pg. 3 (stating that Dolin requested that the file be closed) ] In addition, TKE agreed to pay Dolin a lump sum of $29,266 and to reinstate her to "her former position" at the "prevailing negotiated Mechanic's wage rate of IUEC Local 131." [Doc. 7-1, pg. 4 (stating these facts); Doc. 13, pg. 3 (not disputing these facts); Doc. 7-5 (the Settlement Agreement) ]
*2 The present dispute arises out of TKE's failure to pay Dolin the 12.5% supplement over the base wage rate for Service Mechanics. From August, 2010 to February, 2016, when Dolin was transferred to another TKE location, she was paid the base mechanic's wage without the 12.5% supplement. [Doc. 1, ¶ 44 (stating that TKE discriminated against her "whenever [it] issued [Dolin] pay checks that withheld the 12.5% LR Service Mechanic rate."); Doc. 7-1, pg. 4 n. 4; Doc. 13, pg. 3 (referencing the "plus rate") ] Dolin contends that she never agreed in the Settlement Agreement to a wage rate that did not include the 12.5% supplement. [Doc. 13, pg. 3, ¶ 4]
Dolin filed a second EEOC complaint in January 2014, alleging discrimination based on sex and sexual orientation, as well as retaliation. [Doc. 7-8] The form alleged that the discrimination was a "continuing action" that took place from August *1107 11, 2010 to January 17, 2014. [Doc. 7-8] The EEOC issued a "Notice of Right to Sue" to Dolin in March 2016. [Doc. 1, ¶ 7]
In June 2016, Dolin filed a Complaint in this Court alleging that TKE discriminated against her based on her sex by paying her less than it paid similarly situated male workers performing similar work. [Doc. 1] Dolin also alleges that TKE retaliated against her for filing the 2010 claim of discrimination with the EEOC. [Doc. 1, ¶¶ 51, 53-54; Doc. 13, pg. 4, ¶ 9]
TKE now moves for dismissal of Dolin's claims. TKE argues that some of Dolin's claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) and that other claims should be dismissed for failure to state a claim under Rule 12(b)(6). TKE also argues, in the alternative, that it should be granted summary judgment on Dolin's pay discrimination claims under Rule 56. [Doc. 7]
II. Discussion
TKE makes three arguments. First, that Dolin's hostile-work-environment and retaliation claims must be dismissed because Dolin failed to exhaust administrative remedies. TKE argues that such failure deprives this Court of jurisdiction over these claims under Rule 12(b)(1). Second, that Dolin has inadequately pled sex discrimination and retaliation claims under Rule 12(b)(6). Third, that it is entitled to summary judgment because there is no dispute that Dolin agreed to forego the 12.5% supplement in the 2010 Settlement Agreement. These arguments are addressed in turn.
Motion to Dismiss Under Rule 12(b)(1)
TKE argues that this Court does not have subject matter jurisdiction over Dolin's harassment/hostile-work-environment and retaliation claims because Dolin failed to exhaust administrative remedies regarding those claims. [Doc. 7-1, pg. 7-8]
Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)"generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, TKE's challenge rests on the facts behind Dolin's 2014 EEOC complaint. Therefore, TKE mounts a factual attack on this Court's jurisdiction. "In reviewing a factual attack, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. Stuart v. Colorado Interstate Gas Co. , 271 F.3d 1221, 1225 (10th Cir. 2001) (internal quotation marks and citation omitted). Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. Hollander v. Sandoz Pharm. Corp. , 289 F.3d 1193, 1216 (10th Cir. 2002) (holding that a dismissal based on jurisdiction did not address the merits and should be without prejudice); see Fed. R. Civ. P. 41(b).
Harassment/Hostile Work Environment
*3 TKE maintains that Dolin's harassment/hostile-work-environment claims were not included in her 2014 EEOC charge and that this Court lacks "jurisdiction over claims that are not part of a timely EEOC charge." [Doc. 7-1, pg. 8] The Court notes that there is no explicit claim of "harassment" or "hostile work environment" in Dolin's Complaint. However, she does reference harassment and hostile work environment in two of her *1108 assertions. [Doc. 1, ¶¶ 50, 59] To the extent that Dolin makes harassment or hostile-work-environment claims, such claims must be dismissed because they were not exhausted through the EEOC administrative process.
Although there are cases stating that failure to exhaust administrative remedies raises jurisdictional questions, recent cases have held that some aspects of exhaustion are merely preconditions to suit, not jurisdictional. In Shikles v. Sprint/United Management Co. , our Tenth Circuit stated that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII-not merely a condition precedent to suit." 426 F.3d 1304, 1317 (10th Cir. 2005). In Gad v. Kansas State University , however, the Tenth Circuit held that Title VII's requirement that an EEOC charge be verified, although a requirement for filing for an administrative remedy, is not jurisdictional. 787 F.3d 1032, 1038 (10th Cir. 2015). Instead, the verification requirement is an important component of an EEOC claim that may be raised (or waived) as a defense. Id. at 1040 (stating that "[h]olding verification non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with this Title VII requirement" and that "an employer that identifies and raises a verification defect may still achieve the dismissal of a plaintiff's suit," and calling the verification requirement "a waivable claim processing provision that does not invoke our subject matter jurisdiction" (alterations, internal quotation marks and citation omitted)). Although the Gad Court did not expressly overrule Shikles , it stated that Shikles depended on earlier cases that preceded United States Supreme Court cases addressing Title VII jurisdictional issues and that "the subsequent development of the law underscores the limited force our earlier cases retain today." Gad , 787 F.3d at 1040. In Zipes , the United States Supreme Court stated that compliance with the filing deadlines in Title VII was not jurisdictional, indicating that not every aspect of the administrative requirements is jurisdictional. Zipes v. Trans World Airlines, Inc. , 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). See Arabalo v. City of Denver , 625 Fed.Appx. 851, 859-60 (10th Cir. 2015) (discussing the impact of Gad and stating that Gad "called into question some of our circuit's earlier decisions concluding we lacked subject-matter jurisdiction for other failures to meet Title VII's requirements.").
These limitations on the jurisdictional effect of certain aspects of the administrative process aside, it appears that the basic rule that the scope of "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC" remains good law. Jones v. U.P.S., Inc. , 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks and citation omitted). In Arabalo , the Tenth Circuit held that, even if the Gad holding abrogated the jurisdictional nature of some exhaustion requirements, "[a]s a condition precedent to suit, even if not a jurisdictional prerequisite, [a plaintiff is] required to notify the ... EEOC of the alleged [facts underlying a hostile-work-environment claim] before she could later rely on [those facts] in support of her hostile-work-environment claim." Arabalo , 625 Fed.Appx. at 860.
*4 Whether framed as a jurisdictional matter or a condition precedent to suit, this principle promotes the general purposes of exhaustion, one of which is to "protect employers by giving them notice of the discrimination claims being brought against them and provid[e] the EEOC with *1109 an opportunity to conciliate the claims." Gad , 787 F.3d at 1040 (alterations, internal quotation marks, and citations omitted). In either case, it is Dolin's burden to demonstrate that she met Title VII's exhaustion requirements. Id. at 1041 (stating that a condition precedent to suit is "a burden for plaintiffs to carry"); Arabalo , 625 Fed.Appx. at 860 (holding that the plaintiff's "need to disclose her bases supporting her alleged claim [to EEOC] is a condition precedent to her suit, not a mere affirmative defense for which the defendant must bear the burden").
In reviewing whether Dolin exhausted her hostile-work-environment claim, a court "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to [that] claim." Jones , 502 F.3d at 1186. Neither party included the EEOC's "Notice of Right to Sue" in their pleadings. However, TKE did attach a copy of Dolin's 2014 EEOC charge.[1] [Doc. 7-8]
"To prevail on her hostile[-]work[-]environment claim under Title VII, [Dolin] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Bird v. West Valley City , 832 F.3d 1188, 1205 (10th Cir. 2016) (alteration, internal quotation marks, and citation omitted). In a similar case, the Tenth Circuit affirmed the district court's ruling that a hostile-work-environment claim was not addressed in an EEOC charge. There, the complainant had "checked the boxes marked 'race' and 'retaliation,' " as well as the "box marked 'continuing action.' " Mitchell v. City & Cty. of Denver , 112 Fed.Appx. 662, 667-68 (10th Cir. 2004). The complainant also "filled in the blanks marked 'earliest date' of discrimination and the 'latest date' of discrimination with the same date, September 4, 1996." Id. In the description of the charge, the complainant wrote, "[the defendant] failed to promote me because of my race/African American and in retaliation for engaging in protected activity." Id. (alterations, internal quotation marks, and citation omitted). The complainant also wrote that
(1) he had always been a 'satisfactory to above-satisfactory' employee, (2) three Caucasian males with less seniority and experience had been promoted in the last six months, (3) throughout this period he had consistently complained to his superiors regarding what he perceived to be discriminatory treatment, (4) he had filed a previous charge of discrimination around 1986, (5) [one of the defendant's employees] allegedly stated, "this nigger [complainant] ain't going anywhere as long as he works for me," and (6) he remained employed "at a lesser step than he should be."
*1110 Id.
The Tenth Circuit concluded that this charge "could not reasonably be expected to lead to a hostile[-]work[-]environment/racial[-]harassment claim" and that "[n]othing in [the complainant]'s EEOC complaint indicates a hostile work environment." Id. It also noted that "[the complainant's] EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment." Id. at 668.
Here, Dolin's EEOC charge does not allege a hostile work environment. On the EEOC form, in a box labeled "DISCRIMINATION BASED ON (Check appropriate box(es)):" Dolin checked "sex," "retaliation," and "other." [Doc. 7-8] Beside "other," she entered "Equal Pay." [Doc. 7-8] In a box labeled "DATE(S) DISCRIMINATION TOOK PLACE," Dolin entered "8/11/2010-01/17/2014" and checked a box labeled "CONTINUING ACTION." [Doc. 7-8]
In the description of her claim, she wrote
I began working for [TKE] in Roswell, New Mexico on December 15, 2008 as an LR Service Mechanic. On March 5, 2010, I was wrongfully terminated. Shortly thereafter, I filed an EEOC complaint, 453-2010-00819, concerning gender. On or around August 31, 2010, I agreed to withdraw my complaint with the understanding that I would be reinstated to my former position and would be paid 12.5% above union scale mechanics wages. Since that date, my pay has been lowered and [TKE] insists no such agreement exists.
In addition, female employees are paid much less than male employees who are similarly situated. If a female seeks equal pay, than [sic] she is subjected to her request being turned over to an attorney with the company.
I also believe that my wage issue is due to the fact that I lead an alternative lifestyle, as I am a lesbian.
I believe I am being retaliated against for filing an EEOC complaint in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I and other females are being discriminated against with regard to wages because of our sex (female), [sic] In violation of Title VII of the Civil Rights Act of 1965, as amended, as well as the Equal Pay Act of 1963. In addition, I believe I am being discriminated against with regard to wages due to my sex (male/gender stereotype), in violation of Title VII of the Civil Rights Act of 1964.
[Doc. 7-8]
Moreover, in the Complaint , Dolin states that she "filed charges with the New Mexico Department of Workforce Solutions alleging [TKE] committed sex discrimination, violations of the Equal Pay Act, and unlawful retaliation." [Doc. 1, ¶ 6] Thus, Dolin's own description of her 2014 EEOC charge does not reference harassment or hostile work environment.
In addition, the factual allegations in the Complaint related to hostile work environment are not reflected in the EEOC charge. The only reference to "hostile work environment" in the Complaint includes a statement that Dolin "became aware" that some of her male colleagues "believed [that Dolin's] persistent complaints about the LR rate pay inequity caused co-workers to lose pay." [Doc. 1, ¶ 50] This paragraph also alleges that "some, not all, male LR Service Mechanics" did not receive annual increases as provided for by the CBA. [Doc. 1, ¶ 50] None of these allegations were included in the EEOC charge.
*6 As in Mitchell , even construing Dolin's EEOC charge liberally, the allegations in the charge failed to alert the *1111 EEOC to a hostile-work-environment claim. Hence, Dolin has failed to carry her burden to demonstrate compliance with Title VII's requirements. Consequently, the hostile-work-environment claim must be dismissed.
Retaliation
TKE makes a different exhaustion argument related to Dolin's retaliation claims. TKE argues that, to the extent that Dolin argues that TKE retaliated against her for her 2010 EEOC claim by withholding the 12.5% supplement, the retaliation claim must be dismissed because the decision to pay her the base wage rate only was made over 300 days before the 2014 EEOC charge was filed. [Doc. 7-1, pg. 9; Doc. 15, pg. 6]
The Court understands Dolin's claims to be that 1) TKE paid her less than it paid male workers in similar positions based on her sex, and 2) TKE paid her less than workers in similar positions in retaliation for her 2010 EEOC charge. Dolin's retaliation claim is, therefore, an alternative theory for why she was paid less than other workers. Because Dolin's retaliation claim is grounded in the way TKE paid Dolin, it is differentiated from retaliation claims grounded in a discrete, nonrecurring, act such as termination or failure to promote.
Some background on the law related to timing requirements for Title VII claims is necessary to place the parties' arguments in context. The Lilly Ledbetter Fair Pay Act of 2009 (the Act) "governs how long parties have to file 'discrimination in compensation' claims." Almond v. Unified Sch. Dist. No. 501 , 665 F.3d 1174, 1175 (10th Cir. 2011). The Act was passed in response to the United States Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co. , 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), overturned due to legislative action (Jan. 29, 2009). In that case, the Supreme Court held that Ledbetter's claims were time-barred because she failed to bring them within 180 days of the decision leading to her discriminatory pay. Id. at 643, 127 S.Ct. 2162. It rejected Ledbetter's argument that "each paycheck that offers a woman less pay than a similarly situated man because of her sex is a separate violation of Title VII with its own limitations period, regardless of whether the paycheck simply implements a prior discriminatory decision made outside the limitations period." Ledbetter , 550 U.S. at 625, 127 S.Ct. 2162.
In contrast to the holding in Ledbetter , the Act provides that
For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
42 U.S.C. § 2000e-5(e)(3)(A). Thus, the Act permits "discrimination in compensation" claims to accrue based on one of three circumstances: when "a discriminatory compensation decision or other practice is adopted;" when the plaintiff is subject to that decision, or when the plaintiff is paid pursuant to that decision. See Groesch v. City of Springfield, Ill. , 635 F.3d 1020, 1024 (7th Cir. 2011) ("[T]he statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision.").
*7 TKE points to National Railroad Passenger Corp. v. Morgan for the proposition *1112 that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' " and that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." [Doc. 7-1, pg. 9] 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). But Morgan was addressing allegations of retaliation that did not implicate unequal pay. Instead, the Morgan plaintiff alleged that "he was consistently harassed and disciplined more harshly than other employees on account of his race." Morgan , 536 U.S. at 105, 122 S.Ct. 2061 (internal quotation marks and citation omitted). Moreover, Morgan predated passage of the Act.
More recent cases addressing allegations of reductions in compensation have held that such claims are not time-barred if a reduced paycheck is received by the plaintiff within the 300-day period, even when the discriminatory decision leading to that paycheck was made outside of the charging period. For example, in Nelson v. Special Administrative Board of St. Louis Public Schools, 873 F.Supp.2d 1104, 1116-17 (E.D. Mo. 2012), the Court held that, even though "the initial retaliatory act, the decision to compensate [the p]laintiff at a lower salary, may have occurred more than 300 days prior to the filing of either charge of discrimination, under the [Act] each subsequent instance of discriminatory compensation is actionable, and [the p]laintiff may recover back pay for up to two years preceding the filing of the charge of discriminatory retaliation." See also Groesch , 635 F.3d at 1025 (holding that white appellants' claims not barred where they were denied credit for years of service but African-American workers were granted such credit because the appellants' claims "allege[d] 'discriminatory compensation decisions' and [we]re based on the payment of wages resulting from those decisions"); Vuong v. N.Y. Life Ins. Co. , No. 03CIV.1075(TPG), 2009 WL 306391, at *9 (S.D.N.Y. Feb. 6, 2009), aff'd sub nom. Pheng Vuong v. N.Y. Life Ins. Co. , 360 Fed.Appx. 218 (2d Cir. 2010) (holding that the plaintiff's claim "[wa]s expressly declared to be timely by virtue of the [Act]" where the plaintiff claimed that his compensation was less than it would have been absent a discriminatory decision made outside the required period). Cf. Hutchinson v. City of Oklahoma City , 919 F.Supp.2d 1163, 1170 n. 4 (W.D. Okla. 2013) (rejecting the argument that the Act applies to save retaliation claims for conduct falling outside the charging period where the plaintiff did not allege that the retaliation related to discriminatory compensation or that she "was paid less than her male co-workers for performing substantially the same work"); Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ. , 866 F.Supp.2d 147, 167-68 (E.D.N.Y. 2011) (stating that "[c]ase law in the Second Circuit and elsewhere makes clear that the ... Act ... applies only to discriminatory employment decisions specifically related to pay, and not to other employment decisions, even where such decisions directly affect pay" and that the Act did not apply where the plaintiff had alleged only that she suffered a reduction in pay, not that she was paid less than others similarly situated).
Given Dolin's allegation that TKE retaliated against her by making a compensation decision that resulted in recurring paychecks that were less than those for similarly situated male workers, her claim falls within the ambit of the Act and is not time-barred.
Motion to Dismiss Under Rule 12(b)(6)
TKE also argues that Dolin has failed to state a claim for pay discrimination under the Equal Pay Act, the New Mexico Fair *1113 Pay for Women Act, or Title VII. [Doc 7-1, pg. 10]
*8 In Bell Atlantic Corporation v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court held that, "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " Kansas Penn Gaming, LLC v. Collins , 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). In applying this test, a court accepts as true all well-pleaded facts alleged in the plaintiff's complaint but does not accept the plaintiff's legal conclusions. Ashcroft v. Iqbal , 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." Collins , 656 F.3d at 1214.
TKE argues that Dolin has failed to state pay discrimination claims because she failed to 1) make factual allegations about the duties, skills, and working conditions of the male workers alleged to receive more pay than Dolin, [Doc. 7-1, pg. 11] and 2) the male workers to whom she compares her salary did not work in Roswell, NM and thus did not work in the same "establishment" as Dolin. [Doc. 7-1, pg. 12-13; Doc. 15, pg. 2]
To establish a prima facie case under the EPA, [Dolin] has the burden of proving that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.
Sprague v. Thorn Americas, Inc. , 129 F.3d 1355, 1364 (10th Cir. 1997) (internal quotation marks and citation omitted). The NM Fair Pay for Women Act is nearly identical to the EPA. Compare 29 U.S.C. § 206(d)with NMSA 1978, § 28-23-2(A) (2013). Similarly, under Title VII, "the plaintiff ... bears the burden of proving that the employer intentionally paid her less than a similarly-situated male employee." Mickelson v. N.Y. Life Ins. Co. , 460 F.3d 1304, 1310 (10th Cir. 2006) ; see 42 U.S.C. § 2000e-2.
Dolin has adequately pled her claims. In the Complaint , Dolin states that the 12.5% supplement was paid when the Service Mechanic was required to work under certain conditions, to wit, the Service Mechanic "was required to be 'on call' on a 24/7 basis, was required to respond to client service calls within two (2) hours, and when the Mechanic's assigned route included servicing clients located outside the geographic area identified in the collective bargaining agreement as the 'primary zone.' " [Doc. 1, pg. 3, ¶ 16] Dolin states that, when she was hired, she accepted assignment to the "same client service route" as had been assigned to her male predecessor, who was paid the 12.5% supplement. [Doc. 1, pg. 4, ¶ 17] She states that in March 2010, when Dolin was terminated, TKE "continued to pay other LR Service Mechanics who were male and whose job assignments met the conditions for the LR rate." [Doc. 1, pg. 4, ¶ 21] She alleges that when she was reinstated, she was "assigned [a] client route outside the primary zone, required ... to be in on call status 24/7 for all clients in her route, and required ... to respond to calls within two (2) hours." [Doc. 1, pg. 4-5, ¶ 23] She further alleges that in spite of being assigned work subject to the conditions meriting *1114 the 12.5% supplement, she was not paid the supplement. [Doc. 1, pg. 5, ¶¶ 25, 28] The references to the "conditions" for the 12.5% supplement are sufficient to support Dolin's assertions that 1) the 12.5% supplement is paid on performance under certain conditions, 2) she worked under those conditions, 3) she was not paid the supplement, but 4) male workers working under those conditions were paid the supplement.
*9 While these allegations in the Complaint do not reference skills and specific duties, the lack of such reference does not constitute a failure to state a claim. Dolin's suit does not rest on TKE's failure to pay her as a Service Mechanic. Instead, it depends entirely on a failure to pay the 12.5% supplement. Since the supplement is dependent on working conditions, not skills or duties, Dolin's factual allegations are sufficient.
Moreover, the Court is unpersuaded by TKE's argument that Dolin failed to allege facts related to male workers within the same "establishment" because Dolin did not identify comparators who worked in Roswell, as she did. [Doc. 15, pg. 2] Dolin does not dispute TKE's assertion that while she was assigned to Roswell, NM, she was the only Service Mechanic so assigned. [Doc. 7-1, pg. 4, ¶ 2 (stating this fact); Doc. 13, pg. 3 (not disputing this fact) ] Consequently, there were no Service Mechanics working in Roswell at the same time as Dolin to whom Dolin could point as comparators.
Nevertheless, TKE's argument fails on two fronts. First, Dolin identifies a Roswell employee who both preceded her and succeeded her as a comparator and asserts that he was paid the 12.5% supplement throughout his assignment to Roswell. [Doc. 1, pg. 4, ¶¶ 17, 20] See 29 C.F.R. § 1620.13(b)(4) (1998) (referencing a successor as a comparator).
Second, under the circumstances here, the "establishment" inquiry must be broader than TKE suggests. Both the EPA and the NM Fair Pay for Women Act reference "the establishment" in prohibiting discrimination based on sex.
No employer shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions.
§ 28-23-3 (emphasis added). See 29 U.S.C. § 206(d).
TKE's argument rests on a narrow construction of the term "establishment." The Secretary of Labor defines "establishment" as a physical location, stating that "establishment" "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business. Accordingly, each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). However, the Secretary also recognized that in "unusual circumstances," "two or more distinct physical portions of a business enterprise [may warrant] being treated as a single establishment." 29 C.F.R. § 1620.9(b). Such circumstances might exist where "a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." 29 C.F.R. § 1620.9(b). Consistent with this rubric, some courts have found a single establishment based on *1115 "central control and administration of disparate job sites ... [including] centralized control of job descriptions, salary administration, and job assignments or functions." Mulhall v. Advance Sec., Inc. , 19 F.3d 586, 591 n. 11 (11th Cir. 1994) (collecting cases). Other courts have declined to read "establishment" broadly. See , e.g. , Renstrom v. Nash Finch Co. , 787 F.Supp.2d 961, 967 (D. Minn. 2011).
*10 Here, Dolin alleges, and TKE agrees, that "the terms and conditions of [her] employment, including wages and benefits, are covered ... by a collective bargaining agreement." [Doc. 1, pg. 3, ¶ 5; Doc. 7-1, pg. 3, ¶ 1] Further terms of employment, including wages, are included in "local representative agreements" for mechanics who work in remote locations. [Doc. 7-1, pg. 3, ¶ 1 (stating this fact); Doc. 13 (not disputing this fact) ] These agreements indicate centralized control of job descriptions, salaries, and assignments. In addition, it is the very nature of Dolin's assignment by TKE that renders her unable to identify any Roswell comparators. Indeed, it appears that, under TKE's reasoning, none of their employees working under "local representative agreements" would ever be able to identify comparators in the same town.
Given that TKE hires Service Mechanics to work independently out of remote locations, Dolin appropriately identified other Service Mechanics as comparators (in addition to the one Roswell employee) for her wage discrimination claims, even if those mechanics work in other locations.
Motion for Summary Judgment
In its final argument, TKE argues that it "paid Dolin based on a legitimate, non-discriminatory reason, which was based on a factor other than sex-settlement of a grievance and EEOC charge." [Doc. 7-1, pg. 14] See 29 U.S.C. § 206(d) (permitting "a [wage] differential based on any other factor other than sex"). The Court interprets this argument to be a request for summary judgment on the ground that Dolin's pay was purely a function of the Settlement Agreement. [See Doc. 7-1, pg. 1 (requesting summary judgment in the alternative) ]
Summary judgment under Fed. R. Civ. P. 56(c)"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading...." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Lopez v. LeMaster , 172 F.3d 756, 759 (10th Cir. 1999).
In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex Corp. v. Catrett , 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the nonmoving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to *1116 the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie , 526 U.S. 541, 551-52, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
TKE's argument rests on its interpretation of the language in the Settlement Agreement. For instance, TKE maintains that it paid Dolin "the prevailing negotiated mechanic's wage rate of IUEC Local 131, as provided for in the [S]ettlement [A]greement." [Doc. 7-1, pg. 4, ¶ 6] TKE apparently understands the "prevailing negotiated mechanic's wage rate of IUEC Local 131" to mean the base wage rate only. In contrast, Dolin understands the "prevailing negotiated mechanic's wage rate of IUEC Local 131" to mean the base wage rate plus 12.5% as negotiated in the Local Representative Agreement. [Compare Doc. 7-1, pg. 4 with Doc. 13, pg. 3, ¶¶ 4, 6]
*11 In her Response , Dolin disputes that she agreed to forego the 12.5% supplement in settlement negotiations. [Doc. 13, pg. 3, ¶ 4] However, in her own affidavit, which Dolin attached to her response to TKE's motion to dismiss, Dolin states that "[i]n order to get my job back, I was left no choice by TKE except ... to accept only the elevator mechanic base wage rate under the CBA." [Doc. 13, Exh. A] She also states that she
was advised by [her] union representative ... that if [she] accepted this settlement, including the agreement between the IUEC and TKE that my pay would only be the base mechanic rate upon my re-hire and assignment to the same customer route, that once I resumed performing the work ... the union would negotiate the 12.5% LR rate again as soon as feasible.... On this basis and to get my job back, I agreed to accept the settlement.
[Doc. 13, Exh. A (emphasis added) ]
Hence, Dolin's own affidavit contradicts her assertion that she did not agree to forego the supplement in the Settlement Agreement.
However, even if there were no question of fact as to the terms of the Settlement Agreement, TKE is not entitled to judgment as a matter of law. Although Dolin has the burden of proof at trial to demonstrate that TKE discriminated against her, the fact that she may have agreed to forego the 12.5% supplement is not dispositive on this issue because "the mere existence of a wage agreement cannot be considered a 'factor other than sex' if the contract perpetuates pay differentials which would themselves violate the [Equal Pay] Act." Anderson v. Univ. of N. Iowa , 779 F.2d 441, 444 (8th Cir. 1985) ; see Deanv. United Food Stores, Inc. , 767 F.Supp. 236, 240 n. 1 (D.N.M. 1991) (stating that "[a] person is not precluded from bringing a claim under the Equal Pay Act because he or she has agreed by contract to a certain level of pay."). When a wage differential is justified by "a factor other than sex," the defendant must demonstrate that the factor (here, the Settlement Agreement) is " 'rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue.' " Riser v. QEP Energy , 776 F.3d 1191, 1198 (10th Cir. 2015) (discussing whether a gender-neutral pay classification system could serve as a "factor other than sex") (quoting Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 525 (2d Cir. 1992) ). In other words, the fact that a plaintiff agreed to a lesser wage than her counterparts is only a defense to a sex discrimination charge if the defendant can demonstrate that the wage differential is based on legitimate business purposes.
As TKE makes no argument related to the business purposes underlying the wage differential in the Settlement Agreement, *1117 TKE is not entitled to judgment as a matter of law and TKE's Motion for Summary Judgment must be denied.
III. Conclusion
For the reasons stated herein, TKE's Motion to Dismiss or, in the Alternative, for Summary Judgment , [Doc. 7] is GRANTED as to Dolin's hostile-work-environment claim, and DENIED in all other respects.
SO ORDERED this 31 st day of March, 2017.
All Citations
Slip Copy, 2017 WL 1551990, 2017 Fair Empl.Prac.Cas. (BNA) 108,748

Ms. Cirocco initially sued the United States Small Business Administration and Linda McMahon in both her individual and official capacities. See [# 1]. Plaintiff thereafter filed a notice of voluntary dismissal as to Ms. McMahon in her individual capacity and as to the United States Small Business Administration, leaving only Ms. McMahon in her official capacity. See [# 6].

"EEO complaint" refers to a complaint of discrimination filed with the Equal Employment Opportunity Commission.

Cf. Colo. RPC 3.3 ("(a) A lawyer shall not knowingly:... (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

Plaintiff attaches a copy of a Rule 11 Letter that her former attorney drafted. See [# 23-2]. The Letter is addressed to Defendant's counsel and alleges several violations of Federal Rule of Civil Procedure 11, including that Mr. Gery's declaration "intentionally misleads the court and was made in bad faith," that Plaintiff's former counsel and Mr. Gery "attempted in good-faith to engage in constructive conversation starting in February 2017 to resolve Ms. Cirocco's case," and that, as part of those efforts, "the parties stayed discovery among other deadlines in the EEO process." [Id. at 1]. Plaintiff's former counsel also wrote that he had sent a separate email to Defense counsel, on October 11, 2017, "detailing more facts with regard to Mr. Gery's bad-faith affidavit." [Id. ] In its Reply, Defendant contends that "Plaintiff has not complied with the 'safe harbor' provision of Fed. R. Civ. P. 11(c)(2) - which requires that a motion for sanctions must be served, but not filed or presented to the court until 21 days after service," and thus the allegations asserted in the Letter are not properly before the Court; Defendant additionally contends, "[i]n any event, it is wholly without merit." [# 25 at 2 n.1]. If true, the allegations in the Letter would suggest that Plaintiff's participation in phases of the EEO proceeding ceased as a result of her attorney's agreement with SBA representatives and their efforts at reaching a resolution, and, at a minimum, creates an issue as to whether Ms. Cirocco failed to cooperate during the EEOC process, which is not properly resolved at the motion to dismiss phase. However, Plaintiff fails to provide any account of what occurred prior to filing her lawsuit, and, therefore, Defendant's assertion that Plaintiff did not participate in the EEOC investigation remains uncontroverted.

In so finding, the court must dismiss the action; it cannot then assume jurisdiction exists and address Defendant's Rule 12(b)(6) argument in the alternative. See Colorado Outfitters Ass'n v. Hickenlooper , 823 F.3d 537, 543 (10th Cir. 2016).

The facts in this section come from plaintiff's Complaint and the documents attached to her Complaint as Exhibit A. The 1 court explains why it relies only on these documents below at pp. 7-9.

Although some Tenth Circuit cases hold that characterizing an exhaustion requirement as jurisdictional is important "only 2 when the defendant has waived or forfeited the issue," McQueen v. Colo. Springs Sch. Dist. No. 11 , 488 F.3d 868, 873 (10th Cir. 2007), those cases do not consider whether Rule 12(b)(1) or 12(b)(6) applies and thus they are not on point here. See, e.g. , Hung Thai Pham v. James , 630 Fed.Appx. 735, 738 (10th Cir. 2015) (reciting the above quote after stating that the Circuit reviewed Rule 12(b)(1) dismissals de novo, in a case where the Circuit had no need to consider whether the motion to dismiss should be considered under Rule 12(b)(1) or Rule 12(b)(6) ).

This dual filing procedure allows a person claiming that an employer has discriminated on a legally forbidden basis to 3 commence proceedings with a state agency charged with administrative review of such claims. When an employee chooses to present a claim of discrimination in this fashion, the EEOC "may suspend its investigation and await the [state] Agency's final findings and orders." Doc. 7-1 at 1. The EEOC then may consider the state agency's findings and give them whatever weight the EEOC deems appropriate when making its conclusion. Id. ; see also EEOC v. Commercial Office Prods. Co. , 486 U.S. 107, 110-12, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (discussing the dual filing process and work-sharing agreements between state agencies and the EEOC).

For example, an order dismissing the case, though not a judgment with claim precluding effects, effectively could end 4 plaintiff's opportunity to present her claims. Federal law does not include a savings statute. United States ex rel. Koch v. Koch Indus., Inc. , 188 F.R.D. 617, 632 (N.D. Okla. 1999). So, any new case filing based on enhanced jurisdictional allegations likely would face dismissal as untimely. See id. at 632-33 ("A complaint [based on a federal cause of action] cannot be related back to a complaint over which the court lacked subject matter jurisdiction, not because the court lacked subject matter jurisdiction, but because the law deems the first suit to have never in fact existed.").

Dolin asserts that TKE improperly attached "extrinsic evidence" to its Motion and that the Court should strike such 1 evidence. [Doc. 13, pg. 5 n.1] However, the Court may properly consider the 2014 EEOC charge because it was referred to in Dolin's Complaint and in her Response to TKE's Motion . [See Doc. 1, pg. 2, ¶ 6; Doc. 13, pg. 9-10] Moreover, "[i]n reviewing a factual attack [on the Court's jurisdiction], a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. Stuart , 271 F.3d at 1225 (internal quotation marks and citation omitted). Although Dolin states in a footnote that the materials attached by TKE are "not authenticated," this is not sufficient to attack the document attached by TKE as the 2014 EEOC charge.