KELLY, Circuit Judge.
Plaintiff-Appellant Bryan “Shane” Jones appeals from the district court’s dismissal of his Title VII sex discrimination claim against Defendant-Appellee Needham Trucking, LLC .and his state law tort claim for wrongful interference with a contractual relationship against Defendant-Appellee Julie Needham. See Jones v. Needham, No. CIV-15-0978-HE, 2016 WL 2659618 (W.D. Okla. May 6, 2016). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.
Background
Mr. Jones worked as a mechanic for Needham Trucking from May to November of 2014. 1 Aplt. App. 46. According to Mr. Jones, he was fired because he would not have sex with Ms. Needham, his direct *1288 supervisor and a shareholder of the business.
Mr. Jones completed an intake questionnaire with the EEOC. He checked the boxes for “Sex” and “Retaliation” as the reasons for his claims of employment discrimination, and also wrote out “sex har[as]sment.” Id. at 43. He provided a comparator, another mechanic who “was treated better because he had sex with Ms. Needham.” Id. And he listed two witnesses, both of whom would testify that they knew of the sexual harassment. Id. at 45. In response to questions seeking more detailed explanations, Mr. Jones wrote “[s]ee attached.” Id. at 43. That referenced a six-paragraph statement by Mr. Jones, which concluded with “I was terminated because I refused to agree to Ms. Need-ham’s-sexual advances and I rejected all such efforts by her.” Id. at 46.
Apparently the attachment never made it to the EEOC, nor did the EEOC alert Mr. Jones that it was missing. See 2 Aplt. App. 69-71. Nevertheless, the EEOC prepared the following charge form on behalf of Mr. Jones:
I. I have been employed with Need-ham Trucking LLC since on or about May, 2014. During my employment I was subjected to sexual remarks by owner, Julie Needham. I complained to General Manager, Jonathan Needham and Stephanie Needham about the sexual harassment. Nothing was done. On or about November 3, 2014, Julie Needham terminated my employment.
II. No reason was given for the sexual harassment. No reason was given for not stopping the sexual harassment. No reason was given for my retaliatory termination.
III. I believe I have been discriminated against and retaliated against for participating in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.
1 Aplt. App. 41.
After the EEOC issued a right-to-sue letter, Mr. Jones filed suit against Need-ham Trucking and Ms. Needham with claims of sexual harassment, negligence, negligent or intentional infliction of emotional distress, wrongful interference with a contractual or business relationship, and violation of the Oklahoma Employment Security Act of 1980 (“OESA”). Id. at 9-15. Mr. Jones made clear that his sexual harassment claim took the form of both hostile work environment discrimination and quid pro quo discrimination that culminated in a tangible employment action “resulting] from his refusal to submit to a supervisor’s sexual demands.” Id. at 10.
Needham Trucking and Ms. Needham moved to dismiss all but Mr. Jones’s hostile work environment claim, M. at 22-23, and Mr. Jones voluntarily dismissed his claims for negligence and infliction of emotional distress. Aplee. Supp. App. 16. The district court then granted the partial motion to dismiss. It held that Mr. Jones failed to exhaust his administrative remedies for his quid pro quo sexual harassment claim, that his state law tort claim was precluded by the Oklahoma Anti-Discrimination Act (“OADA”), and that his OESA claim failed for want of a private right of action. Jones, 2016 WL 2659618, at *1-3. Mr. Jones moved to dismiss with prejudice his remaining claim for hostile work environment sexual harassment, which the district court granted. Order Granting Motion to Dismiss, Jones v. Needham, No. 5:15-ev-00978-HE (W.D. Okla. June 7, 2016), ECF No. 35. This appeal followed.[1]
*1289 Discussion
Although the district court described the exhaustion of administrative remedies as a jurisdictional requirement under Title VII, Jones, 2016 WL 2659618, at *1, our recent cases suggest that exhaustion in this context might be better characterized as a claims-processing obligation. See Gad v. Kan. State Univ., 787 F.3d 1032, 1038 (10th Cir. 2015); see also Arabalo v. City of Denver, 625 Fed.Appx. 851, 860 (10th Cir. 2015) (unpublished); Pham v. James, 630 Fed.Appx. 735, 737-38 (10th Cir. 2015) (unpublished).[2] Regardless, our review of the district court’s dismissal for failure to state a claim or for lack of subject matter jurisdiction is de novo. SEC v. Shields, 744 F.3d 633, 640 (10th Cir. 2014) (Rule 12(b)(6)); McKenzie v. U.S. Citizenship & Immigration Servs., 761 F.3d 1149, 1154 (10th Cir. 2014) (Rule 12(b)(1)).
A. Quid Pro Quo Sexual Harassment and Exhaustion of Administrative Remedies
Title VII makes it unlawful for an employer “to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ... because of such individual’s ... sex.” 42 U.S.C. § 2000e-2(a)(l). Sexual harassment has long been included in this proscription of sex discrimination. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); 29 C.F.R. § 1604.11(a). Such sexual harassment traditionally takes one of two forms. The first is “quid pro quo” harassment, in which a plaintiff “proves that a tangible employment action resulted from a refusal to submit to a supervisor’s sexual demands.” Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The second is “hostile work environment” harassment, in which conduct that does not result in a tangible employment action is nevertheless so “severe or pervasive” that it creates an abusive working environment. Id. at 754, 118 S.Ct. 2257; see also Morris v. City of Colo. Springs, 666 F.3d 654, 663 (10th Cir. 2012).
Importantly, the terms “quid pro quo” and “hostile work environment” do not appear in the statutory or regulatory text. Ellerth, 524 U.S. at 752, 118 S.Ct. 2257. Instead, the labels originated in the academy, were incorporated by the courts, and have since “acquired their own significance.” Id. The Supreme Court has warned that they “are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility.” Id. at 751, 118 S.Ct. 2257.
Before filing suit, a Title VII plaintiff must first exhaust administrative remedies by, among other things, filing a sufficient charge of discrimination with the EEOC. See § 2000e-5(e)(1); Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-05, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Aside from requiring that a charge be in writing and made under oath, Congress provided scant detail on what the charge should look like and instead gave the EEOC the responsibility of fleshing out those requirements. See § 2000e-5(b). The EEOC, in turn, has set up a system by which a person will submit information to the agency, typically in the form of an *1290 intake questionnaire, and then the EEOC will render assistance in the filing of the charge. 29 C.F.R. § 1601.6(a). The resulting charge document should contain a “clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.” Id. § 1601.12(a)(3).
The purpose of administrative exhaustion is two-fold: “1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim.” Jones v. UPS, Inc., 502 F.3d 1176, 1185 (10th Cir. 2007) (citation omitted). Given these goals, the charge document must contain the general facts concerning the discriminatory actions later alleged in the legal claim. See id. at 1186. Thus, a plaintiffs claim in federal court “is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.” Id.
This overview raises two questions about the district court’s determination that Mr. Jones did not properly exhaust his administrative remedies. First, which was the proper document to look at? And second, was it sufficient?
The district court seemed to assume that the charge form prepared by the EEOC would necessarily be deficient because of the missing attachment to the intake questionnaire. See Jones, 2016 WL 2659618, at *1-2. Indeed, at times Mr. Jones himself seemed to assume this.[3] See Aplee. Supp. App. 7 (blaming the EEOC for failing to “clearly articulate[ ] quid pro quo sexual harassment claims” in the charge papers). Accordingly, the district court looked at the intake questionnaire itself to see if it could be construed as a charge document sufficient for exhaustion.
While we acknowledge that there are times in which a different filing, such as an intake questionnaire, can constitute a charge for certain purposes, see, e.g., Fed. Express Corp. v. Holowecki, 552 U.S. 389, 401, 405, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), the general rule remains that we typically look to the charge form if one exists. This is because the charge form, not a previous filing, is given to the employer to notify it of the potential claims against it and ordinarily determines the scope of the EEOC’s investigation. See 42 U.S.C. § 2000e-5(b); Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355, 359-60, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); see also Green v. JP Morgan Chase Bank Nat’l Ass’n, 501 Fed.Appx. 727, 731-32 (10th Cir. 2012) (unpublished).
Turning to the charge form itself, then, the question is whether the facts alleged are “sufficiently related to the claim [made in the complaint] such that those facts would prompt an investigation of the claim.” Jones, 502 F.3d at 1186 (citation omitted). We liberally construe the charge document in determining whether this requirement has been met. Id.
Needham Trucking argues that the' facts alleged were insufficient to put it *1291 on notice of the quid pro quo harassment claim made in Mr. Jones’s amended complaint. Aplee. Br. at 11. It takes issue with the EEOC’s argument that the facts alleged were sufficient to exhaust both a quid pro quo and a hostile work environment claim. We are not persuaded. Need-ham’s argumeiit relies on a complete bifurcation between the two forms of sexual harassment, see id. at 8-9, but the Supreme Court has cautioned that they are not wholly distinct claims. See Ellerth, 524 U.S. at 754, 118 S.Ct. 2257. Rather, they are shorthand descriptors to delineate different ways in which sexual harassment can occur. In the first, the tangible employment action that results from a refusal to submit to a supervisor’s demands “itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.” Id. In the second, it is the “severe or pervasive” conduct that effectively alters the conditions of employment so as to violate Title VII. See id.; Pinkerton v. Colo. Dep’t of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009). Both factual scenarios lead to the same place: sexual harassment that violates Title VII’s proscription against sex discrimination in the workplace. See Gregory v. Daly, 243 F.3d 687, 698-99 (2d Cir. 2001). Though the descriptors matter a great deal insofar as they reveal what elements are needed to prove the specific claim of sexual harassment, see Ellerth, 524 U.S. at 752-54, 118 S.Ct. 2257, they are not so unrelated that the facts of the two scenarios could not overlap, or that an investigation resulting from facts specific to one category could not also fall within the scope of an investigation of the other:
Despite Needham’s implicit argument to the contrary, we do not think this understanding is new for this circuit. Needham emphasizes our past cases in which we have continued to use the words “quid pro quo” as evidence that we also continue to recognize “two distinct types of sexual harassment claims.” Aplee. Br. at 8-9. The implication is that perhaps things would be different if the case came about in another circuit that has retired that formulation. Cf., e.g., Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 n.4 (11th Cir. 2004) (using term “tangible employment action” instead of “quid pro quo” to describe “harassment that culminates in a discharge, demotion, or undesirable reassignment”). But as we have explained before, though the labels might differ, the underlying meaning does not. Pinkerton, 563 F.3d at 1059 n.4 (“[W]e use the ‘quid pro quo’ terminology only insofar as it might be useful to show that the harassment culminated in a tangible employment action.” (citing Ellerth, 524 U.S. at 753-54, 118 S.Ct. 2257)); see also Gregory, 243 F.3d at 699 (continuing to use term “quid pro quo,” emphasizing that “[w]hat matters ... is simply whether an employment action was based on plaintiffs sex,” and refusing “to create a separate doctrinal category for employers who make [employees’] workplace success contingent on submission to a supervisor’s sexual demands”). .
A charge need only “describe generally” the alleged discrimination, 29 C.F.R. § 1601.12(b), in order to “give notice of an alleged violation to the charged party,” Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). Mr. Jones’s form has the boxes checked for his allegations of sex-based discrimination and retaliation, and it recounts that he was “subjected to sexual remarks,” that “Julie Needham terminated [his] employment,” and that no reason was given for the termination. 1 Aplt. App. 41. We think this was sufficient to alert Needham to the sexual-harassment allegations and to trigger an investigation that would look into what the sexual remarks were, why Mr. Jones was fired, and whether the two events were connected. Though the com *1292 plaint Mr. Jones filed was more detailed than his charge form, this is to be expected given that a complaint must meet Rule 8 pleading standards and contain sufficient facts to render it plausible. See Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
B. Wrongful Interference with a Contractual or Business Relationship
The OADA “provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of ... sex.” Okla. Stat. tit. 25, § 1101(A). The OADA is analyzed similarly to Title VII claims. See id. § 1305(A); see also Tilghman v. Kirby, 662 Fed.Appx. 598, 601 (10th Cir. 2016) (unpublished). The district court concluded that since Mr. Jones’s tortious interference claim was based on the same set of facts as his sex discrimination claim it fell within the OADA’s limitation of common law remedies. We agree.
Mr. Jones contends that “[n]either in the Amended Complaint nor in other pleading does [he] allege that the tortious interference is caused by the sexual harassment.” Aplt. Br. at 20. But in his amended complaint, Mr. Jones 1) adopted “[a]ll preceding paragraphs” detailing the facts for the sex discrimination claims, 2) alleged that he had a business or contractual relationship with Needham Trucking with which Ms. Needham wrongfully interfered, and 3) claimed that he was damaged in excess of $10,000 because of this interference. 1 Aplt. App. 13. Thus, the only facts in this statement are those he expressly adopted from the prior claims— which is to say, those relating to the alleged sexual harassment and resulting claims.
With this said, it could be that the same facts simply provide the basis for two different legal theories that are sufficiently distinct so as not to be precluded by the OADA. This sometimes happens in the Title VII context when courts have found that the separately-actionable tort is “highly personable” in nature. See Brock v. United States, 64 F.3d 1421, 1423 (9th Cir. 1995) (rape claim not barred by Title VII’s exclusive-remedy provision). Applying this logic, a district court in Oklahoma has held that a plaintiff could pursue both her OADA claim and her common law assault claim, even though both claims were founded on the same facts alleging that her supervisor sexually touched her without her consent. See Cunningham v. Skilled Trade Servs., Inc., No. CIV-15-803D, 2015 WL 6442826, at *3-5 (W.D. Okla. Oct. 23, 2015).
This exception does not apply to Mr. Jones’s claim. Oklahoma defines the elements of a claim for tortious or malicious interference as: “1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference.” Tufty’s, Inc. v. City of Okla. City, 212 P.3d 1158, 1165 (Okla. 2009). Compare this with the elements of a quid pro quo form of sexual harassment: 1) tangible job benefits that are 2) conditioned on an employee’s submission to conduct of a sexual nature, which leads to 3) adverse job consequences when the employee refuses to submit to the sexual conduct. See Pinkerton, 563 F.3d at 1060. The elements are remarkably similar when the alleged malicious conduct is, as here, the conditioning of job benefits on the employee’s submission to sexual conduct.
AFFIRMED in part, REVERSED in part, and REMANDED. Mr. Jones’s motion to certify the OADA question to the Oklahoma Supreme Court is DENIED.

. Although Mr. Jones filed his notice of appeal before his motion to dismiss his remaining claim and before the district court had ruled on that motion or entered a final judgment, Fed. R. App. P. 4(a)(2) provides that a *1289 notice of appeal filed after the court announces a decision but before the entry of judgment "is treated as filed on the date of and after the entry.'' See also Coll v. First Am. Title Ins. Co., 642 F.3d 876, 884-85 (10th Cir. 2011).

. Although not precedential, we find the reasoning of these and the other unpublished opinions cited in this opinion to be instruc-five. See 10th Cir. R 32.1 ' '

. Mr. Jones did, however, preserve an argument that regardless of what filing constituted the final charge—i.e., whether it was the intake questionnaire or the charge form—strict compliance with the EEOC’s regulations in 29 C.F.R. § 1601.12(a) is not required “so long as the charge the Commission receives is a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.” Aplee. Supp. App. 12 (quoting Semsroth v. City of Wichita, 304 Fed.Appx. 707, 712 (10th Cir. 2008) (unpublished) (emphasis, internal quotation marks, and citation omitted)). Since the charge form was before the district court, we . think this preserved an alternative argument that it, and not the questionnaire, constituted the actual charge.