OSCN Found Document:BAUGHMAN v. WORLD ACCEPTANCE CORPORATION, et. al

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BAUGHMAN v. WORLD ACCEPTANCE CORPORATION, et. al
2025 OK 57
Case Number: 121519
Decided: 09/16/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 57, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

DIONNE BAUGHMAN, Appellant,
vs.
WORLD ACCEPTANCE CORPORATION, AND WORLD ACCEPTANCE CORPORATION OF OKLAHOMA, INC. d/b/a WORLD FINANCE CORPORATION, Appellees.

APPEAL FROM THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA,
HONORABLE JEFF VIRGIN PRESIDING

¶0 Plaintiff sued her former employer, alleging she was terminated because of her mental and physical disabilities. Her sole legal claim was for intentional infliction of emotional distress. Defendants moved for summary judgment, arguing, among other things, that the common law claim was prohibited/preempted by the Oklahoma Anti-Discrimination Act. The trial judge granted the motion. Plaintiff then moved to vacate the summary judgment order. Subsequently, the original judge issued an order disqualifying herself. Thereafter, the newly assigned judge granted Plaintiff's motion to vacate the order sustaining summary adjudication. Defendants appealed the order vacating summary judgment, an interlocutory order appealable by right. We retained the appeal and now reverse, remanding with instructions to reinstate the order granting summary judgment in favor of Defendants.

THE TRIAL COURT ORDER VACATING SUMMARY JUDGMENT IS REVERSED AND THE CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

Samuel R. Fulkerson, Brandon D. Kemp and Matthew D. Craig
Ogletree Deakins Nash Smoak & Stewart P C
Oklahoma City, OK
Attorneys for Appellants 

Reggie N. Whitten and Michael Burrage
Whitten Burrage
Oklahoma City, OK

- and -

J. Revell Parrish
Glass & Tabor, LLP
Norman, OK
Attorneys for Appellee

W. Kirk Turner and Jacob S. Crawford
McAfee & Taft, P.C.
Tulsa, OK
Attorneys for Amicus Curiae

GURICH, J. 

¶1 Plaintiff, Dionne Baughman, filed suit against her former employer, World Acceptance Corporation of Oklahoma, Inc., and its parent corporation, World Acceptance Corporation. Baughman's petition presented a single claim for intentional infliction of emotional distress. Baughman alleged that she was fired while on short-term disability leave due to mental health concerns stemming from multiple stressors, including a prior cancer diagnosis. Defendants moved for summary judgment, arguing Baughman's exclusive remedy would fall under the Oklahoma Anti-Discrimination Act. The trial judge initially granted the motion; however, after the case was reassigned, the new judge reversed the ruling. Defendants subsequently filed this appeal from an interlocutory order appealable by right, and the Chief Justice retained the matter by special order.

I. FACTUAL & PROCEDURAL HISTORY

¶2 On September 18, 2017, Dionne Baughman accepted a position as branch service representative with World Acceptance Corporation of Oklahoma, Inc. (WAC). Baughman was designated as an at-will employee, and she was assigned to work at the company's store in Norman.

¶3 In July 2018, Baughman informed her supervisor that she had been diagnosed with cancer and would require ongoing testing and treatment. In response, WAC transferred her to its northwest Oklahoma City branch to reduce her commute and keep her closer to medical facilities. While undergoing treatment, Baughman used sick days, vacation time, and leave under the Family and Medical Leave Act (FMLA). Following a hysterectomy in 2019, Baughman's cancer showed signs of improvement. In a June 2019 employee evaluation, Baughman acknowledged WAC's efforts to accommodate her schedule. Her manager recommended a six percent pay increase, describing Baughman as "a great lady and a pleasure to work with." 

¶4 In October 2020, Baughman experienced intense pain and difficulty breathing following a severe coughing episode at work. She had been struggling with a persistent and severe cough for several weeks and decided to take time off work to address her health. Concerned that her symptoms might be related to breast cancer, she scheduled an appointment with her oncologist. However, testing and imaging confirmed the cancer had not progressed. Despite this, her pain and breathing difficulties persisted until December 2020. After undergoing multiple diagnostic imaging tests, doctors determined she had fractured a rib, likely due to violent coughing.

¶5 On January 6, 2021, Baughman became distressed after watching the events taking place at the United States Capitol and did not return to work after her lunch break. Barrett asked Baughman to return to work because her presence was needed, and she had not made a prior request for time off. Apparently, the conversation became hostile. After talking to Barrett, Baughman contacted WAC Regional Vice President, Rodney Owens. During her deposition, Baughman testified that Owens suggested she "go back to the office and apologize for being emotional over the phone." 

¶6 On March 2, 2021, Baughman texted Barrett about some health concerns. Barrett allowed Baughman to leave work early and encouraged her to see a doctor. The following day, Baughman informed Barrett of a scheduled MRI and inquired about medical leave or short-term disability. Barrett asked Baughman to keep her updated and forwarded the request to WAC's human resources department. A couple of days later, a WAC human resource benefits specialist, Jodiannah Rish, called Baughman to provide her with instructions on requesting leave under the Family Medical Leave Act and/or short-term disability. Rish followed this up with an email which also provided instructions on both FMLA and disability leave. The details of their conversation are disputed--Baughman recalled Rish stating she could take six weeks of leave, while WAC denied that Rish provided any specific timeframe, claiming she only explained Baughman's rights under FMLA. That same day, Sun Life gave Baughman instructions and forms to request FMLA leave and short-term disability, stressing that she had to submit medical certification by March 20, 2021. 

¶7 While still on leave, Baughman sent a group text message to Barrett and another co-worker on March 9, 2021, expressing that she "miss[ed]" them. Barrett responded by asking when she might be able to return to work. Baughman replied that she "did not have an answer," to which Barrett reassured her that it was "fine" and that they were "just wondering." Baughman then apologized for interrupting them during work hours and added, "God['s] favor be upon you!" Shortly after, however, the tone of her messages shifted, becoming more confrontational. She then sent the following message: "Wait a second. When I spoke to HR last week and I put in for short term leave they told me I had four weeks. Why are you asking me after one week when I'm coming back?" 

So I guess the answer to your question is ask me again in three weeks and I'll let you know. I'll come clear my desk tomorrow so you can have the space but don't ask me again when I'm coming back. I'll let you know.

Please don't play with me right now. I had a nervous breakdown or an awakening or set free or whatever you call it last week. Please don't text me about work any more [sic]. Please ask HR any time you are wondering. I am wondering myself!!!!!!!!!!!!

And take me out of this group conversation!!!!!!!!!!!!! 

Later that night Baughman sent another text message to Barrett, stating "You should be ashamed of yourself! Never mind never mind. Please forget my name." 

¶8 Baughman visited her office twice in March 2021. What transpired during these visits is disputed by the parties. Baughman maintains she returned to work solely to receive assistance completing disability paperwork. WAC alleged that Baughman visited the branch office to retrieve her belongings. Additionally, WAC claimed that Baughman disrupted co-workers and made a confrontational gesture simulating "dusting off her feet" as she left the premises. Baughman denied being disruptive and does not recall making the gesture as alleged by WAC employees.

¶9 After leaving the WAC facility on March 12th, Baughman sent additional text messages to Barrett. 

I spoke with Julie yesterday. She said the text messages had stopped. I let Julie know that she could block [Plaintiff's] calls/texts. Julie didn't want to block her because she wanted to be aware of the text messages. I let her know that if she felt threatened, she could file a police report and she said she didn't feel threatened. Julie said she would keep us in the loop if Dionne tried to make contact again.

WAC human resources generalist, Jamie Williams, testified that although Baughman's text messages were unprofessional, they did not appear threatening. Regardless, documents from WAC human resources indicate Barrett and other employees at Branch # 652 did not want Baughman to return to their location at the end of her medical leave.

¶10 On March 15, 2021, Baughman sent an e-mail entitled "World Acceptance lawsuit liability" to WAC payroll and benefits manager, Victoria Herron. 

After my mental breakdown and getting out of the office, I have had a lot of clarity about my career with World Acceptance. I realize I have a slam dunk lawsuit on my hands against World Acceptance. . . .As a child of God I have never thought it right to demand money from someone without working for it. With that said I would like a few things that money can not buy.

Baughman continued by enumerating several requests she wanted from either WAC or its management level employees, including apologies from certain company employees; changes to the employee bonus system; protection of WAC employees from termination; and circulation of a biblical verse amongst "as many people in the company as possible." 

I realize my career with this company has come to an end. I would like to do what I feel called to do in furthering the Kingdom of Christ now. I appreciate World Finance allowing me the opportunity to use the gifts God gave me while I worked there. I am on short term [sic] disability for 12 weeks now at 60% pay and I would like to ask for any donations available through the volunteer cancer program [providing me with] the ability to receive 100% of my pay while I am healing from cancer and life's pains. 

Three days later, Williams contacted Baughman, who clarified that she did not intend to resign. Williams accepted her explanation and did not treat the email as a resignation.

¶11 On March 22, 2021, Sun Life informed WAC that they had not received the required documentation to support Baughman's medical leave request by the March 20th deadline. As a result, her claim was denied. Sun Life notified Baughman that her medical leave request had been denied due to her failure to submit the required supporting medical documentation. That same day, WAC benefits specialist Rish contacted Baughman to inform her that, because of the denial, she was no longer on job-protected leave. Later that evening, Baughman sent an email to Williams and Herron threatening a lawsuit.

¶12 On March 23, 2021, 

¶13 Baughman contends that WAC's stated reason for her termination is merely pretextual. She points to deposition testimony from company employees indicating that the text messages in question were not perceived as threatening. Furthermore, she asserts that she was never informed of the specific company policy she allegedly violated. Baughman also argues that, under the employee handbook, a lesser form of discipline was both permissible and more appropriate given the circumstances. 

¶14 Pursuant to the Oklahoma Anti-Discrimination Act (OADA), 25 O.S.2021, §§ 1101

¶15 After completing discovery, WAC filed its summary judgment motion on October 28, 2022, asserting five independent grounds to justify judgment in its favor. 

¶16 On August 2, 2023, Judge Jeff Virgin granted Baughman's motion to reconsider the prior summary judgment entered by Judge Walkley. In doing so, Judge Virgin determined that Baughman's claim for intentional infliction of emotional distress was not preempted by either the OADA or the Oklahoma Administrative Workers' Compensation Act, 85A O.S.2021, §§ 1

II. STANDARD OF REVIEW

¶17 On appeal, we review a trial court's decision to vacate a judgment to determine whether it constitutes an abuse of discretion. Matter of K.S., 2017 OK 16393 P.3d 715Id. ¶ 8, 393 P.3d at 717. Additionally, to evaluate whether Judge Virgin abused his discretion in vacating Judge Walkley's order sustaining summary judgment, we must apply a de novo review of the summary adjudication's correctness. Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Service, Inc., 2009 OK 77224 P.3d 685

¶18 A party is entitled to summary adjudication "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." 12 O.S.2021, § 2056H2K Tech, Inc. v. WSP USA, Inc., 2021 OK 59503 P.3d 1177Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74410 P.3d 1007

III. ANALYSIS

A. The order vacating summary judgment is an interlocutory order appealable by right.

¶19 In its petition in error, WAC asserts that this appeal stems from an interlocutory order appealable as a matter of right--specifically, an order granting a new trial or vacating a judgment. Baughman, however, challenges this Court's jurisdiction, contending that the appeal effectively arises from an order denying summary judgment and is not subject to review.

¶20 Baughman is correct--a lower court's denial of summary judgment is neither an interlocutory ruling eligible for immediate appeal under statutory authority nor suitable for certification and review on certiorari. See 12 O.S.2021, §§ 952Lincoln Farm, L.L.C. v. Oplinger, 2013 OK 85315 P.3d 97112 O.S.2021, §§ 952

¶21 The journal entry granting summary judgment in favor of WAC was filed on February 22, 2023. Accordingly, Baughman's motion to reconsider was deemed filed as of the date the order was memorialized and thus falls within the ten-day window. 12 O.S.2021, § 563(C); Okla. Sup. Ct. R. 1.22(c)(1). While Baughman labeled her filing a motion to reconsider, its substance reveals an unmistakable effort to vacate the final judgment under 12 O.S.2021, § 651Smith v. City of Stillwater, 2014 OK 42328 P.3d 119212 O.S.2021, § 651See also Schepp v. Hess, 1989 OK 28770 P.2d 3412 O.S.2021, § 990.2

¶22 Baughman unconvincingly suggests that she "was clearly not seeking a new trial, as no trial was ever conducted." 

¶23 To bolster her contention that WAC's appeal is premature, Baughman points to our decision in LCR, Inc. v. Linwood Properties, 1996 OK 73918 P.2d 1388only_a_portion of LCR's claims. Linwood filed a motion requesting a new trial. After initially denying the motion for new trial, the trial judge later reconsidered and vacated her original order of summary adjudication. LCR appealed the decision, and Linwood filed a motion to dismiss the proceeding, arguing the matter was prosecuted from a non-appealable order. Id. ¶ 3, 918 P.2d at 1390-91. We initially denied the motion; however, the Court of Civil Appeals issued a decision finding the underlying trial court ruling was not appealable. We granted certiorari to address whether we had jurisdiction over the appellate case.

¶24 After reviewing the order vacating summary adjudication, we determined the initial ruling was not a final judgment:

The August 6, 1993 so-called "summary judgment", which was later vacated, addressed_itself_to_some,_but_not_to_all,_issues_in_LCR's_foreclosure_suit. That decision does not rise to the level of a judgment in the 12 O.S.1991 § 681Because_the_August_6_memorial_does_not_resolve_all_of_the_issues_in_the_case,_it_clearly_falls_short_of_a_judgment. It is hence to be treated as but an intermediate order in the case.

Id. ¶ 9, 918 P.2d at 1392 (footnotes omitted & emphasis added). Because the original judgment was not final, the subsequent order vacating that partial judgment was not an appealable interlocutory order. Id. ¶ 13, 918 P.2d at 1394. In contrast, Judge Walkley's order granting summary judgment to WAC disposed of the lone claim in the case, rendering the procedural posture materially distinct from that in Linwood.

¶25 The Oklahoma statutes and this Court's rules expressly authorize appellate review of an order granting a new trial or vacating a final judgment. See 12 O.S.2021 §§ 952

B. Baughman's intentional infliction of emotional distress claim is preempted by the Oklahoma Anti Discrimination Act.

¶26 This matter was retained to address the scope and application of the exclusive remedy provisions set forth in the Oklahoma Anti-Discrimination Act (OADA). World Acceptance Corporation (WAC) advances several assignments of error, principally arguing that Judge Virgin abused his discretion in vacating the prior grant of summary judgment. However, because we conclude that Baughman's claim is preempted by the OADA, we need not reach these ancillary issues. The core dispute centers on whether Baughman's intentional infliction of emotional distress (IIED) claim is, in essence, a statutory claim for employment discrimination. WAC contends that it is, asserting the tort is based entirely on allegations that Baughman was terminated due to her physical and mental health conditions--conduct that falls squarely within the ambit of the OADA. WAC further maintains that the 2011 amendments to the Act abolished all common law remedies for employment-based discrimination.

¶27 The OADA was originally enacted in 1968 to effectuate, at the state level, the policies reflected in federal civil rights legislation, including the Civil Rights Act of 1964. See 25 O.S.Supp.1968, § 1101Burk v. K-Mart Corp., this Court carved out a narrow public policy exception to the at-will employment doctrine, permitting tort recovery where an employee termination contravenes a clear mandate of public policy derived from constitutional, statutory, or decisional law. 1989 OK 22770 P.2d 24Burk tort to encompass terminations violating the OADA. Tate v. Browning-Ferris Indus., 1992 OK 72833 P.2d 1218Id. ¶ 19, 833 P.2d at 1230.

¶28 That framework shifted substantially in 2011, when the Oklahoma Legislature enacted significant amendments to the OADA. Most notably, the Legislature revised Sections 1101 and 1350 to expressly provide that the OADA constitutes the sole and exclusive remedy for employment-related discrimination claims. See 2011 Okla. Sess. Laws ch. 270, §§ 1, 11, at 1091, 1095. As we have previously recognized, the Legislature possesses the constitutional authority to displace common law causes of action by enacting statutes which furnish an exclusive remedy. A prominent example is the Workers' Compensation Act, upheld in Adams v. Iten Biscuit Co., 1917 OK 47162 P. 938Knox v. Okla. Gas & Elec. Co., 2024 OK 37549 P.3d 1260

¶29 We have repeatedly held that legislative abrogation of common law remedies must be articulated in clear and unambiguous terms. See Tate, ¶ 11, 833 P.2d at 1225 ("Where the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute declares it to be exclusive."). In enacting the 2011 amendments, the Legislature unmistakably declared that the OADA supplants all common law remedies for claims predicated on employment discrimination. See MacDonald v. Corp. Integris Health, 2014 OK 10321 P.3d 98025 O.S.2011, § 110125 O.S.2011, § 1350

¶30 When assessing whether a common law tort is preempted by a statutory scheme, three guiding principles apply: (1) whether the statute explicitly declares itself to be the exclusive remedy; (2) whether the statute clearly expresses an intent to displace common law causes of action; and (3) whether the tort arises from the same factual predicate as a claim covered by the statute, or instead addresses distinct and independent conduct. See Tate, supra; Patterson v. Rural Water Dist. 2, 438 F.Supp.3d 1258, 1278 (W.D. Okla. 2020) (finding plaintiff's common law tort claims were preempted because they were predicated on the same facts as discrimination claims covered under the OADA). Here, the plain language of Sections 1101 and 1350 reflect the Legislature's intent for the OADA to comprehensively govern employment discrimination under state law and to preempt any common law claims arising from the same conduct. Accordingly, any common law claim that merely repackages allegations of discriminatory treatment as a separate tort--such as IIED--is preempted by the Act.

¶31 As previously noted, this Court has not yet articulated the specific circumstances under which common law claims are preempted by the OADA. However, both the Tenth Circuit and the federal district courts in Oklahoma have addressed this issue and consistently treated the OADA as an exclusive remedy for employment discrimination, applying the same analytical framework used in Title VII cases. Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017); see also Cunningham v. Skilled Trade Services, Inc., 2015 WL 6442826 (CIV-15-803-D) (W.D. Okla. 2015) ("Claims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA.").

¶32 The dispositive question, then, is whether the plaintiff's IIED claim arises from the same operative facts as a claim actionable under the OADA. See Jones, 856 F.3d at 1292. If so, the claim is barred, regardless of how it is labeled. See, e.g., Patterson v. Rural Water Dist. 2, 438 F.Supp.3d at 1278. Thus, our analysis must focus on the source of the alleged harm. Where the gravamen of the complaint is unlawful discrimination in employment, the OADA supplies the exclusive remedy. Where, by contrast, the plaintiff alleges a personal wrong divorced from any protected employment status or adverse employment action, a common law claim may be viable.

¶33 Applying the facts to the foregoing test, Baughman's claim for IIED is clearly barred by the OADA. Here, Baughman filed a charge of discrimination with the Oklahoma Attorney General's Office of Civil Rights Enforcement pursuant to the OADA, asserting that WAC discriminated against her based on her disability--namely, her cancer diagnosis and mental health impairments. Subsequently, Baughman initiated the underlying civil action, asserting only a claim for IIED, expressly disclaiming reliance on any other statutory cause of action. Nevertheless, her IIED claim rests entirely on the same facts that underlie her OADA-based charge of discrimination.

¶34 Baughman's allegations of emotional distress arise from WAC's treatment of her during and after her medical leave, including its handling of her health disclosures, alleged failure to accommodate her short-term disability, perceived insensitivity by her supervisors, and her eventual termination. She specifically identified actions such as a supervisor asking about her return to work, an HR representative allegedly miscommunicating the scope of her FMLA leave, and the company's refusal to allow her to return to the office--asserting that these actions exacerbated her emotional state and contributed to what she described as a mental breakdown. These events were also the basis of her administrative charge and were framed as evidence of discriminatory treatment and failure to accommodate her disability. These are quintessential allegations of disability discrimination, squarely within the purview of the OADA. Consequently, her emotional distress claim is not independent of the allegedly discriminatory employment practices, but rather flows directly from them.

¶35 Under Oklahoma law, a common law tort claim is not actionable when it is inextricably linked to acts of discrimination that fall within the scope of the OADA. Because Baughman's IIED claim arises entirely from the same conduct she contends would form a discrimination claim under the OADA, the common law tort is preempted under § 1350(A). 

C. Baughman's assertion that her claim is based on a "highly personal" tortious act, and therefore exempt from the preemptive effect of the OADA is without merit.

¶36 Baughman concedes that the OADA generally provides the exclusive remedy for employment discrimination but asks this Court to recognize an exception for what she describes as "highly personal" torts that exist independently of the statutory recourse. WAC counters by arguing that the OADA does not contain language which exempts Baughman's claim. But even if Oklahoma were to recognize exceptions to exclusivity under the OADA, WAC insists that Baughman did not present any evidence which would support a wrong "distinct from employment discrimination." 

¶37 It should be noted that the OADA does not contain language which would provide an exception to the limited remedial scheme under the Act. The Legislature simply did not provide a vehicle for bypassing the OADA for claims arising out of employment-based discrimination. As discussed previously, the OADA was adopted to carry out the policies mandated by Title VII. Consequently, many of the cases addressing Oklahoma workplace discrimination under the OADA, also involved Title VII and were adjudicated in federal court proceedings. Accordingly, we consider those federal decisions instructive in assessing Baughman's argument that she should be permitted to pursue a claim independent of the exclusive remedies provided by the OADA.

¶38 Baughman relies on cases such as Cunningham v. Skilled Trade Srvcs., Inc., 2015 WL 6442826 (CIV-15-803-D) (W.D. 2015), Branum v. Orscheln Farm & Home, L.L.C., 2019 WL 2570527 (CIV-18-281-KEW) (E.D. Okla. 2019), and Brock v. United States, 64 F.3d 1421 (9th Cir. 1995), in support of allowing her common law claims to proceed alongside statutory ones under the OADA. However, these cases are materially distinguishable. For example, in Cunningham, the plaintiff alleged being sexually assaulted by her supervisor--conduct separate from carrying out the legitimate business of the employer and a distinct action from discrimination. Brock also involved a claim predicated on sexual assault of a female employee by her supervisor. Brock, 64 F.3d at 1422. Baughman's reliance on Branum is likewise misplaced because it involved a federal district court's consideration of a motion to dismiss brought under Fed. R. Civ. P. § 12(b)(6). Branum did not consider evidence presented in connection with a motion for summary adjudication.

¶39 In Brock v. United States, the court recognized that certain egregious acts--such as sexual assault and rape--may simultaneously support a claim of employment discrimination while also constituting an independent tort. The court explained that "although the [supervisor's] rape and sexual assault of [the plaintiff] is sufficient to establish a claim of sexual discrimination, that conduct also constitutes more than sexual discrimination." Brock, 64 F.3d at 1423. Cases cited in support of Baughman's attempt to bypass the OADA's exclusive remedies involved conduct so extreme and unrelated to the normal course of employment that it gave rise to stand-alone tort claims. 

CONCLUSION

¶40 In 2011, the Oklahoma Legislature amended the OADA to eliminate uncertainty surrounding the viability of Burk-style tort claims. Through the enactment of Section 1350 and amendment of Section 1101, it expressly supplanted common law remedies where the statute supplies a cause of action for the same conduct. The exclusivity of the OADA was intended to bring coherence and finality to Oklahoma's anti-discrimination policy. Plaintiff's IIED claim arises from the same operative facts that would support a statutory disability discrimination claim--namely, her termination and her employer's response to her physical and mental health conditions, including her medical leave request. The emotional harm alleged does not stem from distinct or personal misconduct beyond the reach of the OADA. Baughman's only recourse under the facts presented would be to pursue an action based on violations of the OADA and Title VII. Judge Virgin therefore abused his discretion in vacating the prior order granting summary judgment.

¶41 On remand the assigned trial judge is directed to set aside his order vacating summary judgment and reinstate Judge Walkley's order awarding WAC summary judgment on Baughman's claim for intentional infliction of emotional distress.

CONCUR: ROWE, C.J., WINCHESTER, EDMONDSON, COMBS, GURICH, AND DARBY, JJ.

CONCUR IN RESULT: JETT, J.,

Jett, J., concurring in result: "I agree with the majority that the trial court's order setting aside summary judgment in favor of Defendants should be vacated. Plaintiff's purported motion to reconsider should be analyzed as a motion for new trial. I conclude that the trial court's order granting a new trial should be reversed.

CONCUR IN PART, DISSENT IN PART: KANE, J.,

Kane, J., concurring in part, dissenting in part: "I concur to reversing the order vacating the summary judgment, but I dissent to relitigating judgment at this juncture of the litigation-it is premature."

DISSENT: KUEHN, V.C.J., by separate writing.

FOOTNOTES

I've got this overwhelming feeling because of your lack of love for people that need it you're going to have a hard time finding God's favor again in that office! Good luck boss! It's extremely funny how you always had so much to say when you were talking about other people! You said you were my friend! Shame on you Julie! Don't worry. I will ask nothing more of YOU!

***

I'm fully aware now that you care nothing about me but don't worry I just got off the phone with HR and she clearly specified I do not have to go back to your office!!!!!!!!!!!!! I'm out for up to 12 full weeks and do not have to work with you taking advantage of me ever again!

***

Your days of believing everybody in this world is dispensable beside your family to you are going to slap you hard in you[r] face! I believe the Bible would call that selfishness!

Defendant's Motion for Summary Judgment, Ex. 22, O.R. Vol 2 of 3, p. 248-49, 251.

Id. at 266.

Id.

Moore v. Haley, 2021 OK 37505 P.3d 91812 O.S.2011, § 696.3

or a decision by the court." (emphasis added); see also, Reeds v. Walker, 2006 OK 43157 P.3d 100

Id. ¶ 2, 918 P.2d at 1390.

12 O.S.2021, § 68112 O.S.2021, § 953

MacDonald, we recognized the Legislature's clear declaration of purpose regarding the abolition of common law remedies for discrimination in employment. Our decision rejected a constitutional challenge to the damage limitations in the OADA based on Okla. Const. Art. 5, §§ 46 and 59. Id.

Computer Publications, Inc. v. Welton, 2002 OK 5049 P.3d 732Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 883 (10th Cir. 2015). Baughman does not dispute that the same set of facts supporting her IIED claim would form the basis of a discrimination claim under the OADA.

Branum, at p. 4.

See e.g., Brock, 64 F.3d at 1422 (plaintiff alleged that her supervisor raped and sexually assaulted her); Cunningham, 2015 WL 6442826, at *5 (tort claim involving sexual assault was a "a highly personal violation that goes beyond discrimination"). But cf., Jones, 856 F.3d at 1292 (allegations of sexual harassment were insufficient to support an independent tort claim that falls outside the scope of the OADA); Patterson, 438 F.Supp.3d at 1278-79 (claim for tortious interference based on age and associational disability was not actionable outside of the OADA); Branum, 2019 WL 2570527 at *5 (allegations the employer made false accusation[s] that plaintiff used a racial slur when referring to a customer, [which] resulted in her termination, and [caused] actual emotional distress was not actionable outside of the OADA).

 

 

KUEHN, V.C.J., DISSENTING:

¶1 World Acceptance Corporation (WAC) moved for summary judgment below. Judge Walkley granted that motion, finding that Baughman's claim was preempted by the Oklahoma Anti-Discrimination Act. That finding was memorialized in a formal journal entry on February 22, 2023. A day before, on February 21st, Baughman filed a motion to reconsider the ruling. Judge Walkley set the motion for a hearing; however, at the hearing she recused. The case was reassigned to Judge Virgin, and both sides filed supplemental briefs. Judge Virgin granted the motion to reconsider and denied WAC's motion for summary judgment. WAC filed this appeal.

¶2 As Baughman admitted below, a motion to reconsider is not a thing. A pleading so titled, if filed within ten days of the filing of a judgment, may be treated as a motion for new trial. Smith v. City of Stillwater, 2014 OK 42328 P.3d 1192Rules for District Court of Oklahoma, 12 O.S. Ch. 2 App. Because Baughman's pleading was filed within ten days of the formal journal entry, we treat it as a motion for new trial. We review a trial court's decision to grant or deny a motion for new trial for abuse of discretion, to determine whether the decision is based on a wrong legal conclusion, or if the evidence provides no rational basis for the ruling. Smith, 2014 OK 42

¶3 WAC's petition in error mistakenly characterizes Judge Virgin's Order as overruling Judge Walkley and vacating her decision to grant summary judgment to WAC. The Majority correspondingly treats Judge Virgin's decision as one to vacate a judgment, reaches the merits of the claim, and finds that the initial order granting summary judgment should be reinstated. But Judge Virgin did not vacate the previous ruling. He granted the motion for new trial and independently denied the motion for summary judgment. This dual ruling requires a very different legal analysis.

¶4 We first ask whether Judge Virgin abused his discretion in granting the motion for new trial. Nothing in his brief Order supports that conclusion. Judge Virgin reviewed the pleadings and argument and decided to reexamine the claim. This decision was neither contrary to law nor did it lack a rational basis. I would find that, on this record, we cannot disturb Judge Virgin's initial decision to grant the motion for new trial.

¶5 Having granted Baughman's motion for new trial, Judge Virgin considered WAC's motion for summary judgment and denied it. That is, the proceedings continue below. Nothing in the case is resolved. As the Majority admits, this is not an appealable order. 12 O.S. §§ 952

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105